In re Jean BERNARD and Marie Bernard, Debtors.

Bankruptcy No. 95–11161–JNF.

United States Bankruptcy Court, D. Massachusetts.

April 18, 1996.

Leonard M. Frisoli, Jr., Cambridge, MA.

Richard Askenase, Trustee, Boston, MA.

Joseph G. Albiani, Winchester, MA, for debtors.

Gary L. Donahue, U.S. Trustee, Boston, MA.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is the "Objection to Debtors' 2nd Amended Chapter 13 Plan by Secured Creditor East Cambridge Savings Bank." The Interim Chapter 13 Trustee (the "Chapter 13 Trustee") filed a Response to the Objection filed by the East Cambridge Savings Bank (the "Bank"). The Court heard the Objection and the Response on January 29, 1996. At the conclusion of the hearing, the Court ordered the Chapter 13 Trustee to file a brief by February 20, 1996 and the Bank to file a reply brief by February 29, 1996.

The Chapter 13 Trustee moved for an extension of time within which to file his brief, which motion the Court allowed. The Chapter 13 Trustee filed his brief on February 29, 1996, and the Bank filed its reply brief on March 11, 1996. On March 28, 1996, the United States Trustee (the "U.S. Trustee") requested permission to file a brief, noting that he had just received copies of the briefs submitted by the Chapter 13 Trustee and the Bank.[1] The Court granted the U.S.

---

1. The Court notes that counsel to the Chapter 13 Trustee did not serve a copy of his brief on the U.S. Trustee.

Trustee's request. The U.S. Trustee filed his brief on April 8, 1996.

Upon consideration of the briefs, as well as the undisputed facts, the Court now makes the following findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052.

## II. FACTS

The Debtors filed a Chapter 13 petition on February 21, 1995. On Schedule A–Real Property, they listed a three family home, located at 36 Nye Avenue, Brockton, Massachusetts, which they valued at $61,000.00. On Schedule D–Creditors Holding Secured Claims, they listed the Bank with a claim of $143,534.00. The Debtors listed no other priority or unsecured creditors.

On Schedules I and J, the Debtors disclosed monthly income of $2,986.00, including income from real property in the sum of $1,150.00, and monthly expenditures of $1,639.00. Thus, the Debtors have excess income of $1,347 with which to fund their Chapter 13 plan.

In April of 1995, the Debtors filed motions under 11 U.S.C. §§ 506(b) and 1322(b)(2) with respect to their property in Brockton. The Bank opposed the motions. The Court scheduled an evidentiary hearing to determine the value of the Debtors' property. However, the parties reached a settlement prior to the hearing.

On August 8, 1995, the parties filed a Stipulation (the "Stipulation") in which they agreed that the value of 36 Nye Avenue was $80,000.00. In addition, the parties agreed to the following: 1) the Debtors would pay the Bank's $80,000.00 secured claim over 60 months through their plan with interest calculated at 9% per annum; 2) the Debtors would pay "the balance of the mortgage lien over 60 months as part of their unsecured claims paid at 10%;" 3) the Bank would retain its lien in full until the successful completion of the plan; and 4) upon the successful completion of the plan, the Bank would discharge its lien. The Court approved the Stipulation on August 24, 1995.

Four months later, on December 1, 1995, the Debtors filed their Second Amended Chapter 13 Plan (the "Plan"). Through their Plan, the Debtors propose to make total monthly payments to the Bank of $1,972.00, including $1,660.67 toward payment of the Bank's $80,000.00 secured claim and $113.67 toward payment of the Bank's $68,202.00 unsecured claim. The Debtors' Plan provides for the payment of fees to the Chapter 13 Trustee totalling $11,829.00 or $197.15 per month.

The Bank filed an Objection to the Debtors's Plan in which it asked the Court to order the Debtors to pay its secured claim outside the Plan. In its Objection, the Bank indicated that "[i]f the Debtors were to pay the Bank outside the Plan, there would be a savings in Trustee fees of $9,964.02 ($1,660.67 × 60 @ 10% = $9,964.02), which sum would be available for application to the Bank's unsecured claim of $68,202.00." [2] By the Bank's calculations, if the Debtors paid the Bank's secured claim directly, outside the Plan, it would receive a 25%, rather than a 10%, dividend on its unsecured claim, and the Trustee's fees would be $1,867.98, rather than $11,829.00.

The Chapter 13 Trustee filed a Response to the Bank's Objection in which he stated the following: 1) that the Plan complies with the provisions of 11 U.S.C. § 1322 and § 1325(a)(5)(B) and, consequently, the Bank lacks standing to object to the Debtors' Plan; 2) that there are no grounds for the Bank's objection to confirmation because the Plan complies with the Bankruptcy Code; 3) that cases such as *In re Fulkrod,* 973 F.2d 801 (9th Cir.1992), *In re Reid,* 179 B.R. 504 (E.D.Tex.1995), *aff'd,* 77 F.3d 473 (5th Cir. 1995), and *In re Ford,* 179 B.R. 821 (Bankr. E.D.Tex.1995), hold that payments to creditors on impaired claims must be paid through the Chapter 13 Trustee; 4) that the main reason for the Objection was to avoid paying the Chapter 13 Trustee's fee, a position that, if adopted by the Court, would undermine the self-funding Chapter 13 program envisioned by Congress; and 5) that the precedent created by upholding the

---

**2.** The Bank filed a proof of claim in the sum of $148,202.00. In view of the agreed value of the collateral securing the claim ($80,000.00), the Bank's unsecured claim is $68,202.00.

Bank's objection also would undermine the program because of its effect in so-called Chapter 20 cases (i.e. Chapter 7 cases that convert to Chapter 13).

The Bank filed a brief addressing the Chapter 13 Trustee's Response. It maintained that it had standing to object to confirmation of the Debtors' Plan because it is "materially affected" by the Debtors' proposed payments through the Plan. Citing *In re Wagner*, 36 F.3d 723 (8th Cir.1994), it also argued that the Bankruptcy Code permits direct payments to impaired secured creditors, and the Court has discretion to permit direct payments to it.

The U.S. Trustee makes the most cogent arguments with respect to the matter now before the Court in a brief captioned "Comments Pursuant to 28 U.S.C. § 586(a)(3)(C) in Support of Confirmation of the Debtors' Second Amended Plan."[3] The U.S. Trustee argues that the Bank waived any objection to its treatment under the Plan by entering into a Stipulation with the Debtors that outlined the treatment of its claims under the Debtors' Plan. Because the Court approved the Stipulation between the parties, the U.S. Trustee maintains that the treatment memorialized in the Stipulation and incorporated into the Plan is the law of the case.

The U.S. Trustee also argues that the Objection fails to raise any factual or legal disputes relevant to confirmation because the Debtors' Plan satisfies all the elements of 11 U.S.C. § 1325(a)(5)(B) and (b).[4] Specifically and correctly, the U.S. Trustee notes that the Debtors provide in their Plan for the retention of the Bank's lien and a stream of payments in an amount not less than the allowed amount of the Bank's secured claim. Likewise, with respect to the Bank's unsecured claim, the Debtors' Plan provides for a 10% dividend, and the Bank does not argue that the Debtors have not and will not apply all their disposable income to the payment of the 10% dividend.

The U.S. Trustee next argues that the Debtors cannot be compelled to pay the Bank directly for the following reasons: 1) only the Debtors may propose a Chapter 13 plan, *see* 11 U.S.C. §§ 109(e) and 303(a); 2) there is no statutory or case authority that would permit the Court to order the Debtors to pay the Bank directly if their Plan otherwise complies with the provisions of Chapter 13; and 3) granting the Bank's request would violate the compensation scheme for the Chapter 13 Trustee and the compensation order issued under the authority of the Attorney General of the United States, *see* 28 U.S.C. § 586(e).[5]

---

**3.** Section 586(a)(3)(C) provides the following:

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall— . . .
(3) supervise the administration of cases and trustees in cases under chapter 7, 11, 12, or 13 of title 11 by, whenever the United States trustee considers it to be appropriate—
(C) monitoring plans filed under chapters 12 and 13 of title 11 and filing with the court, in connection with hearings under sections 1224, 1229, 1324, and 1329 of such title, comments with respect to such plans. . . .

28 U.S.C. § 586(a)(3)(C).

**4.** Section 1325(a)(5) and (b) provide the following:

(a) Except as provided in subsection (b), the court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder. . . .
(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan. . . .

11 U.S.C. § 1325(a)(5), (b).

**5.** Section 586(e) provides in relevant part the following:

(e)(1) The Attorney General, after consultation with a United States trustee that has appointed

In support of this last argument, the U.S. Trustee states 1) that the structure of Chapter 13 contemplates that plan payments will be made by the Chapter 13 Trustee, *see* 11 U.S.C. §§ 1322(a)(1),[6] 1326(c)[7] and 1325(c);[8] 2) that the Bankruptcy Code does not authorize debtors to make direct payments to creditors on impaired secured claims in order to avoid the Chapter 13 Trustee's fees, *see id.* §§ 1322(a)(1), 1325(a)(5)(B)(ii), and 1326(c); and 3) that "a standing Chapter 13 trustee's statutory allowance is subject only to administrative adjustment by the Attorney General, and not to case-by-case review by courts." *See In re Savage,* 67 B.R. 700, 706 (D.R.I. 1986).

## III. DISCUSSION

The Court finds that it need not specifically address all the arguments raised by the parties, particularly as the Court agrees with the positions advanced by the U.S. Trustee, and has previously ruled in *In re Liriano,*

No. 85–12711–JNF, slip op. at 7 (Bank. D.Mass. January 12, 1986), that debtors may depart from the norm of payments to creditors by the Chapter 13 Trustee only if they advance a " 'significant reason' " for doing so.

■ With respect to the arguments made by the parties, the Court finds that the first two arguments raised by the U.S. Trustee are both persuasive and dispositive. In this case, the Bank agreed to a specific treatment of its claims in the Stipulation. In accordance with the Stipulation, the Debtors proposed a Plan which implemented the terms of Stipulation, and the Chapter 13 Trustee indicated his lack of objection to the Plan by submitting to this Court a proposed order of confirmation. The Bank cannot be heard objecting to a Plan that does no more than implement the provisions of an agreement it entered into voluntarily and with the assistance of counsel. Accordingly, the Court finds that the Bank waived its Objection to

an individual under subsection (b) of this section to serve as standing trustee in cases under chapter 12 or 13 of title 11, shall fix—
(A) a maximum annual compensation for such individual consisting of—
(i) an amount not to exceed the highest annual rate of basic pay in effect for level V of the Executive Schedule; and
(ii) the cash value of employment benefits comparable to the employment benefits provided by the United States to individuals who are employed by the United States at the same rate of basic pay to perform similar services during the same period of time; and
(B) a percentage fee not to exceed
(i) in the case of a debtor who is not a family farmer, ten percent ... based on such maximum annual compensation and the actual, necessary expenses incurred by such individual standing trustee.
(2) Such individual shall collect such percentage fee from all payments received by such individual under plans in the cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee. Such individual shall pay to the United States trustee, and the United States trustee shall deposit in the United States trustee System Fund—
(A) any amount by which the actual compensation of such individual exceeds 5 per centum upon all payments received under plans in cases under chapter 12 or 13 of title 11 for which such individual serves as standing trustee; and
(B) any amount by which the percentage for all such cases exceeds—

(i) such individual's actual compensation for such cases, as adjusted under subparagraph (A) of paragraph (1); plus
(ii) the actual, necessary expenses incurred by such individual as standing trustee in such cases. Subject to the approval of the Attorney General, any or all of the interest earned from the deposit of payments under plans by such individual may be utilized to pay actual, necessary expenses without regard to the percentage limitation contained in subparagraph (d)(1)(B) of this section [sic].
28 U.S.C. § 586(e).

6. Section 1322(a)(1) provides the following:
(a) The plan shall—
(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. . . .
11 U.S.C. § 1322(a)(1).

7. Section 1326(c) provides the following:
(c) Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.
11 U.S.C. § 1326(c).

8. Section 1325(c) provides the following:
(c) After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee.
11 U.S.C. § 1325(c).

the Plan by entering into the Stipulation with the Debtors which set forth how its claims would be treated under their Plan.

■ Moreover, as the Chapter 13 Trustee and the U.S. Trustee recognize, the Bank has no sustainable grounds for objecting to the Debtors' Plan under section 1325(a)(5) and (b) of the Bankruptcy Code. Its secured and unsecured claims are treated in accordance with provisions of the Bankruptcy Code. The treatment may not comport with the Bank's sense of fairness, but this is not a sufficient ground for this Court to either deny confirmation or order the Debtors to pay the Bank directly outside the Plan—an order that would be unprecedented because of the absence of any statutory or case authority.

■ Although the Court finds the Bank's arguments to be without merit, the Court can sympathize with its position. The Chapter 13 Trustee's fee of $11,892.00 or $197.15 per month for issuing two checks to one creditor does appear excessive when compared with a payment of $113.67 per month on the Bank's $68,202.00 unsecured claim. Under *In re Savage, supra,* and the statutory scheme of 28 U.S.C. § 586(e), this Court does not have the authority to reduce Chapter 13 Trustee's fee. Accordingly, if the Chapter 13 Trustee's fee can be reduced, the decision to reduce the fee would have to be made by the Chapter 13 Trustee or the U.S. Trustee. Assuming that the Chapter 13 Trustee or the U.S. Trustee is permitted to reduce the percentage fee under extraordinary circumstances, the Court questions whether this case illustrates the type of circumstance where such a reduction might warrant an exercise of discretion as the fee imposed is out of all proportion to the work involved in administering a single creditor case. Nevertheless, in view of the increased dividend that would be available to the Bank from direct payments, it is unfortunate and perplexing that the Bank and the Debtors did not work out a payment plan outside of the umbrella of bankruptcy jurisdiction.

## IV. CONCLUSION

In accordance with the foregoing, the Court hereby overrules the Bank's Objection to the Debtors' Chapter 13 Plan. An order of confirmation shall enter.