### In re Marcelino BARBOSA and Mariana Barbosa, Debtors.

### Bankruptcy No. 96–17709–JNF.

United States Bankruptcy Court,
D. Massachusetts.

July 30, 1999.

---

Anthony Gray, Boston, MA, for debtor.

Doreen Solomon, Milton, MA, trustee.

Richard Hackel, Samuel Shriro, Boston, MA, for creditor.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

## I. INTRODUCTION

Two matters are before the Court: 1) the "Motion of the Chapter 13 Trustee for Modification of Plan after Confirmation" (the "Motion to Modify Plan"); and 2) Mellon Mortgage Company's "Motion to Modify Order of March 31, 1999 to Compel

Debtors' Counsel to Escrow the Net Sale Proceeds Pending Further Order of this Court and/or to Compel Turn Over of $50,-668.35 from the Net Sale Proceeds and to Compel Conversion to a Case under Chapter 7 in the Event that This Case Becomes Ripe for Dismissal" (the "Motion to Modify Order"). The Debtors filed Oppositions to both motions. The pleadings raise difficult issues as to what constitutes property of the estate in a Chapter 13 case in which a confirmed plan vests real property in the Debtors and the Debtors subsequently sell the real property for a price in excess of the value ascribed to the property in both a stipulation filed with the Court and the order of confirmation. In practical terms, the pleadings raise the issues of whether the Debtors, as a result of receipt of proceeds from the sale of investment property in excess of what is required to satisfy their confirmed Chapter 13 plan, may be compelled to increase the dividend to unsecured creditors from 10% to 100% as a condition of their discharge. The pleadings highlight the intricacies and inconsistencies of various sections of Chapter 13 of the Bankruptcy Code.

## II. FACTS

The facts are undisputed. The Debtors filed a voluntary petition under Chapter 13 on October 9, 1996. On the same day, they filed Schedules and a Statement of Financial Affairs. On Schedules I and J, they disclosed monthly income of $5,113.00, including income from real property of $1,030.00, monthly expenses of $3,145.00, and excess income of $1,968.00. The Debtors amended Schedule J several times. On July 17, 1998, they filed an amended Schedule J in which they showed projected monthly expenses of $3,545.00 and excess income of $1,586.00

On September 23, 1998 the Court confirmed a Chapter 13 plan following the

approval, on May 12, 1997, of a Stipulation signed on May 5, 1997 as to the value of the Debtors' investment property located at 26 Payson Avenue, Dorchester, Massachusetts (the "Property").[1] The Stipulation between Mellon Mortgage Company ("Mellon") and the Debtors provided that the Property had a value of $64,000.00. It also provided that the Debtors would repay the entire $64,000.00 as a secured claim with annual interest of 9% and that "the balance of the Creditors [sic] claim shall be paid through the repayment plan at a rate of *not less than 10%.*" (emphasis supplied). Finally, the Stipulation provided that Mellon would retain its lien until completion of the plan and that the Stipulation "be entered as a judgment ... without the necessity of a hearing."

The plan as confirmed 1) provided for monthly plan payments over 60 months of $1,486.00; 2) provided for payments to Mellon on its "entire claim of $64,000 ... during the plan with interest at nine (9%) percent per annum, subject to prepayment at any time, in whole or in part, without premium or penalty;"[2] 3) provided for direct payments to The Money Store, the mortgagee with respect to the Debtors' residence; 4) provided for a dividend of 10% both for two general unsecured creditors with claims totaling $1,036.34 and for Mellon with respect to its unsecured claim in the stipulated sum of $50,000.00 arising from cramdown of its mortgage, *see* 11 U.S.C. §§ 1322(c), § 506(d); and 5) provided that "[i]f the secured claim of Mellon ... is prepaid (with interest earned to the date of payment), the monthly plan payment shall thereafter be reduced to an amount sufficient to cover the amount payable monthly on Section IV unsecured claims, plus Trustee's commission, thereon." The Debtors' confirmed 13 plan had an effective date of November 1, 1996. The

---

1. The Debtors did not claim an exemption in this property.

2. The plan also provided that "[t]otal payments of principal and interest shall equal

$80,678.97, consisting of 59 payments of $1,265.85 each, and a final payment of $5,993.82."

order of confirmation provided in pertinent part the following:

Pursuant to 11 U.S.C. § 1327, the provisions of the confirmed Plan bind the debtors and all creditors; the confirmation of the Plan vests all property of the estate in the debtors; and all property vesting in the debtors is free and clear of any claim or interest of any creditor, except as provided in the Plan or this order.

On February 19, 1999, the Debtors filed a Motion under 11 U.S.C. § 1303 and Bankruptcy Rule 6004 Authorizing the Sale of Property Free and Clear of Liens and Encumbrances.[3] Pursuant to their Motion and Notice of Intended Private Sale of Estate Property, the Debtors sought authority to sell the Property to Gregston Maxwell or his nominee for $137,500.00. The Debtors represented in their Motion that the sale of the Property was in their best interest and that of plan creditors because Mellon's secured claim would be prepaid in full from the proceeds and the amount of their monthly plan payments would be substantially reduced. The Chapter 13 Trustee and Mellon were not convinced. Both filed objections to the sale. Although the Chapter 13 Trustee's objection was timely filed, Mellon's was not.

On April 2, 1999, the Court entered an order overruling the objections and permitting the sale of the Property subject to the following:

The mortgage lien in favor of Mellon Mortgage Company ("Mellon") securing a stipulated claim of $64,000 (as reduced by payments made under the Plan) shall be paid in full from the proceeds of the sale of the Property, and with the balance of such proceeds to be held in escrow by Brown, Rudnick, Freed & Gesmer ("BRF & G"), until the earlier of (a) an agreement by and between the Debtors and Doreen Solomon of the Office of the Chapter 13 trustee ("Chapter 13 Trustee") regarding disbursement of such proceeds, and (b) disposition by the Court, by a final order, adjudicating a motion filed by the Chapter 13 Trustee (with respect to which the Debtors reserve their right to oppose) seeking an amendment to the Plan, *provided however*, that if such motion is not filed and served on or before April 2, 1999, BRF & G shall immediately release the proceeds from escrow and disburse such proceeds to the Debtors without any requirement of an agreement with the Chapter 13 Trustee.

On April 2, 1999, the Chapter 13 Trustee filed her Motion for Modification of Plan after Confirmation seeking to increase the amount of payments to unsecured creditors from 10% to 100% and to reduce the time for such payments to no more than 14 days after the closing on the sale. On April 5, 1999, Mellon filed its Motion to Modify Order seeking an order requiring the Debtors to turn over $50,668.35 to the Chapter 13 Trustee to enable her to pay a dividend of 100% to unsecured creditors or in the alternative converting the case to a case under Chapter 13 prior to "any dismissal of this case for any reason whatsoever."

On May 3, 1999, the Court heard the Motions and the Oppositions filed by the Debtors. During the hearing, the Debtors, the Chapter 13 Trustee and Mellon consented to the entry of an order pursuant to which they agreed to the following: 1) that the net proceeds of the sale of the

---

**3.** *See also* MLBR, Appendix 1, Chapter 13 Rule 13–14, which provides the following: (a) Any sale of the property of the estate outside the ordinary course of business, including but not limited to, the debtor's principal residence, real property, or other property must be approved by the Court after notice and a hearing. A motion for such approval shall be made in accordance with 11 U.S.C. § 363, Fed.R.Bankr.P. 4001 or 6004, and MLBR 6004–1, as applicable, and the notice of sale shall confirm to MLBR Official Local Form 2A. The motion to sell shall contain a proposed distribution of the proceeds of the sale . . . .

Property in the amount of $129,397.64 were to be held in escrow by BRF & G, pending further order of the Court; 2) BRF & G was authorized to release the sum of $73,946.25 from the escrow to be "used to pay in full the current balance of the secured stipulated claim of Mellon (totaling $37,184.82 as of April 28, 1999, *plus* interest at the *per diem* rate of $8.98, *less* any additional amounts received by Mellon from the Chapter 13 trustee) and hazard insurance paid by Mellon (totaling $7,013.00) with respect to the Property, with the balance of the released funds to by paid to the Debtors;" and 3) that the order would be valid, binding and enforceable notwithstanding the dismissal, conversion or closing of the case. The Court took Mellon's Motion to Modify Order and the Chapter 13 Trustee's Motion to Modify Plan under advisement, although the effect of the Assented to Order partially mooted the relief requested by Mellon.

## III. POSITIONS OF THE PARTIES

### A. *The Chapter 13 Trustee*

The Chapter 13 Trustee seeks an order compelling the Debtors to file an amended plan increasing the dividend to unsecured creditors to 100%. She observes that pursuant to the Sale Motion, after satisfaction of Mellon's secured claim and liens against the Property, the Debtors intend to retain the proceeds of the sale, which by her calculations would amount to approximately $95,000. Because of the absence of an explicit statement in the Sale Motion that the Debtors intend to continue making their plan payments, the Chapter 13 assumes that the Debtors believe that the sale completes their obligations under their plan. Seeking to extend the holding of *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), she argues that it is improper for the Debtors to retain the proceeds from the sale and receive a windfall of close to $100,000, as, in her view, the increase in the value of the

Property should accrue to the benefit of creditors, not the Debtors.

Although she cites *In re Rangel,* 233 B.R. 191 (Bankr.D.Mass.1999), and admits that the Property vested in the Debtors pursuant to the confirmation order and, thus, is no longer property of the estate, the Chapter 13 Trustee also argues that the Debtors through the Sale Motion, seek to reduce both the time and amount of their payments on both secured and unsecured claims. Accordingly, she argues that the Debtors are modifying their plan and must comply with 11 U.S.C. § 1325. *See In re Martin,* 232 B.R. 29 (Bankr. D.Mass.1999). She maintains that, if the Debtors are compelled to modify their plan, their plan as modified will satisfy the "best interests" and "best efforts" tests of § 1325 because the Debtors can pay Mellon's secured claim, pay a 100% dividend to unsecured creditors and still retain $44,-610.75 in proceeds from the sale. She calculates that the total cost of the confirmed plan would have been $94,360.76 and that an additional $50,668.35 is necessary to satisfy 100% of all unsecured claims, after crediting the Debtors for the amounts paid.[4]

### B. *The Debtors*

The Debtors maintain that they are not required to increase the dividend to unsecured creditors. They intend to continue making payments due under the Plan, less the amount that would be due on Mellon's secured claim, although they are willing to prepay the balance of the agreed 10% dividend on allowed unsecured claims. Citing *In re Bernard,* 201 B.R. 600 (Bankr. D.Mass.1996), the Debtors argue that the Chapter 13 Trustee is seeking to upset the terms of the Stipulation and Plan for Mellon's benefit, as it holds 97% of the general unsecured claims, despite the bargain the Debtors made with Mellon.

---

4. The Court is unable to reconcile the figures used by the Chapter 13 Trustee. The exact

figures, however, are not determinative of the motions before the Court.

The Debtors also distinguish the decision in *Martin* because the Chapter 13 debtors in that case sought to modify their plan, while in this case it is the Chapter 13 Trustee who is moving to compel the Debtors to modify their plan. Also, they note that *Martin* involved the disposition of additional disposable income. They maintain that they will have no additional disposable income because, following the sale, they will not be receiving rent from the Property.

The Debtors also argue that the Trustee's position would eviscerate § 1321 and that, pursuant to § 1327(a) and (b), the provisions of their confirmed plan bind the creditors and vest all property of the estate in them. In short, the Debtors state that the Property and its proceeds are not and were not property of the estate at the time of the sale and that the Sale Motion was filed "in order to accommodate the buyer of the Property and to satisfy the Chapter 13 Trustee's demand that such a motion be filed." They also state that permitting Mellon to get paid more than a 10% dividend as a result of the "not less than 10%" language in the Stipulation, would render the Stipulation meaningless. Finally, the Debtors state that although future income of the Debtors may become property of the estate post-confirmation pursuant to 11 U.S.C. §§ 1306 and 1329(a), such income is not at issue here.

## IV. DISCUSSION

### A. *Post–Confirmation Modification of the Plan*

The plethora of issues in this case arise from the post-confirmation sale of the Debtors' real estate in the context of statutory provisions that are, for the most part, oriented toward the payment of creditors from projected future earnings of debtors who have regular monthly income. 11 U.S.C. §§ 101(30), 109(e). Thus, while 11 U.S.C. § 1303 expressly provides that "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title," [5] sections such as § 1322, § 1325(b)(1)(B) § 1326, and § 1329 conform more closely with the notion of a "wage earner" plan. The sale of the Property precipitated the need for this Court to construe a number of Bankruptcy Code sections that "are difficult to reconcile," *Rangel*, 233 B.R. at 193, and perhaps even impossible to reconcile.

As a result of the sale of the Debtor's Property, the Chapter 13 Trustee seeks an order compelling the Debtors to modify their plan so as to apply the sale proceeds to both increase payments to unsecured creditors and to reduce the time for making such payments. The Debtors, through their Sale Motion, implicitly seek to modify their plan to reduce the time for satisfying the claims of unsecured creditors.[6] Thus, sections 1329, 1306 and 1327(b) are immediately implicated.

Section 1329 permits the Chapter 13 Trustee, unsecured creditors and debtors to request modification of a Chapter 13 plan prior to the completion of payments for three purposes:

(1) [to] increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) [to] extend or reduce the time for such payments; or

(3) [to] alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

---

5. Section 363(b) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, *property of the estate.*" 11 U.S.C. § 363(b).

6. The Debtors, through their Sale Motion, also sought to prepay in full Mellon's secured claim. Their confirmed plan expressly permitted prepayment at any time. Therefore, use of the sales proceeds to satisfy Mellon's secured claim would not be a proposed modification of the plan.

11 U.S.C. § 1329(a). Thus, facially, the Chapter 13 Trustee and the Debtors have standing to request modification of the existing plan.[7]

■ The first issue confronting the Court is whether the Chapter 13 Trustee must show a substantial change in circumstances to compel the Debtors to modify their Chapter 13 plan. Some courts emphasize that principles of res judicata apply to motions invoking § 1329 and hold that, unless there has been a substantial or unanticipated post-confirmation change in the debtor's circumstances, a confirmed Chapter 13 plan cannot be modified. *See Arnold v. Weast (In re Arnold),* 869 F.2d 240, 243 (4th Cir.1989); *In re Fitak,* 92 B.R. 243, 249–50 (Bankr.S.D.Ohio 1988), *aff'd,* 121 B.R. 224 (S.D.Ohio 1990). *See also Anderson v. Satterlee (In re Anderson),* 21 F.3d 355, 358 (9th Cir.1994) (dicta). Others, relying upon the plain language of the statute, conclude that modification is permissible without a threshold showing of a change in financial circumstances. *In re Witkowski,* 16 F.3d 739, 746 (7th Cir.1994); *In re Brown,* 219 B.R. 191, 195 (6th Cir. BAP 1998); *Max Recovery, Inc. v. Than (In re Than),* 215 B.R. 430, 436 (9th Cir. BAP 1997); *Powers v. Savage (In re Powers),* 202 B.R. 618, 622 (9th Cir. BAP 1996); *In re Powers,* 140 B.R. 476, 479 (Bankr.N.D.Ill.1992); *In re Perkins,* 111 B.R. 671, 673 (Bankr. M.D.Tenn.1990).

In *Witkowski,* the United States Court of Appeals for the Seventh Circuit considered the appeal from an order of the bankruptcy court granting the motion of the Chapter 13 trustee, made after some credi-tors failed to file claims, to modify the debtor's plan to increase the percentage dividend payable to creditors who did file claims. The debtor had obtained confirmation of a plan pursuant to which he proposed to pay creditors a dividend of 10%. Because fewer claims were filed than the debtor anticipated, the required payments under the confirmed plan exceeded the amount necessary to provide a 10% return to unsecured creditors. The circuit court began its analysis by observing the following:

> A bankruptcy plan basically sets forth an estimate of the total amount of money that the debtor owes creditors and the amount he can afford to pay them. The plan then establishes an estimated payment schedule which includes the monthly payments the debtor will make, the time period in which these payments will be paid, and the total percentage each creditor will receive on his claim....

> \*　　\*　　\*　　\*　　\*　　\*

> Once the allowable claims are established, the actual amount the debtor must pay may differ from the amount of estimated claims. This may require an adjustment in the payment schedule, depending on the type of plan.

16 F.3d at 740–41 (citations omitted). The court then described two models of bankruptcy plans that have evolved to adjust the payment schedule:

> a "percentage plan" is a plan which provides a set percentage of his claim each creditor will receive but leaves the exact amount the debtor will pay in flux until

---

7. Although the Debtors did not expressly state in their Sale Motion what they intended with respect to the payment of unsecured claims, in subsequent pleadings and at the May 3, 1999 hearing, they indicated that they intend to prepay the 10% dividend to unsecured creditors provided for in their plan, including Mellon with respect to its deficiency claim, from the sales proceeds, thus completing their plan payments and entitling them to a discharge. *See* 11 U.S.C. § 1328(a). The Debtors represent that it is only the Trustee who is seeking to modify their plan. They overlook that their proposal to reduce the time for payments requires a motion to modify their plan under § 1329 and the filing of amended Schedules I and J. *See* MBLR, Appendix 1, Local Chapter 13 Rule 13–12. If their plan is not modified, the Debtors, arguably, would be required to continue making monthly payments to the Trustee in the amount of $1,486.00, less the amount payable to Mellon on its secured claim, for the duration of their 60 month plan.

all claims are approved. A "pot plan" refers to a plan which provides that the debtor will pay a fixed amount or "pot" of money into the bankruptcy estate but the percentage creditors will receive ultimately depends on the total amount of claims that are approved. *Id.* at 741. In *Witkowski,* the court assumed that the order of confirmation, which provided for a 10% dividend based upon 47 monthly payments of $600 included language "or such lesser time as may be required to pay all claims as provided above," i.e. a 10% dividend. *Id.*

The debtor argued that his plan was a percentage plan which automatically accounted for the surplus resulting from the filing of fewer claims than anticipated. He claimed that he could complete his plan in 43 rather than 47 months, and that the Chapter 13 Trustee had failed to demonstrate an unanticipated substantial change in his financial circumstances to warrant modification. *Id.* at 741–42. In determining that § 1329 did not require a showing of a substantial change in circumstances, the court noted that "the statutory framework of the Bankruptcy Code plainly assumes the possibility of modifications of bankruptcy plans after they are confirmed." 16 F.3d at 745. It held that "the

clear and unambiguous language of § 1329 negates any threshold change in circumstances requirement and clearly demonstrates that the doctrine of res judicata does not apply." *Id.* at 746.[8] *But see U.S. v. Richman (In re Talbot),* 124 F.3d 1201, 1209 (10th Cir.1997) (" 'Absent timely appeal, confirmed plan is res judicata and its terms are not subject to collateral attack.' ").

This Court observes that the approach taken by the court in *Witkowski* was driven by the recognition that creditors could be paid more if the debtor's plan was viewed as a pot plan rather than as a percentage plan. In other words, if the debtor was required to continue making monthly payments of $600 for 47 months the unsecured creditors would receive more than a 10% dividend.

■■■ This Court adopts the approach taken by the Court in *Witkowski,* with the caveat that motions to modify cannot be used to circumvent the appeals process for those creditors who have failed to object to confirmation of a Chapter 13 plan or whose objections to confirmation have been overruled. Moreover, §§ 1327 [9] and 1330 [10] accord significant finality to confirmation orders in Chapter 13 cases.[11]

8. The court stated the following:

Section 1327 of the bankruptcy code provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to the plan." § 1327. Congress, however, also provided a mechanism to change the binding effect of § 1327 when it passed § 1329 to allow for modifications. "If the drafters of the Bankruptcy Code intended for a confirmation hearing to have res judicata effect, there would be little or no reason for Section 1329." Moreover, congress could have specifically imposed a precondition to a § 1329 modification, but it did not do so. In fact, where it deemed it appropriate, Congress has specifically provided a "change in circumstance" prerequisite under another provision of the Bankruptcy Code. § 1328(b). This provision makes it clear that congress did not intend the com-

mon law doctrine of res judicata to apply to § 1329 modifications.
16 F.3d 745 (citations omitted). Even if this Court were to conclude that the Chapter 13 Trustee must show a substantial change in circumstances, the Court observes that the Chapter 13 Trustee could satisfy that standard. Although the Debtors contemplated the sale of their Property in their Chapter 13 plan, the sales price was more than double the stipulated value of Mellon's secured claim.

9. *See* note 18, *infra.*

10. Section 1330(a) provides that "[o]n request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud." 11 U.S.C. § 1330(a).

11. The tension between according confirmation orders finality and avoiding the potential

Thus, while *Witkowski* may be a correct statement of the law,[12] as a practical matter, parties requesting modifications of Chapter 13 plans must advance a legitimate reason for doing so, and they must strictly conform to the three limited circumstances set forth in § 1329. *See Witkowski*, 16 F.3d at 745–46.

■■■ The Court also determines to follow the courts in *Witkowski* and *Martin* with respect to percentage and pot plans. As Judge Hillman stated in *Martin*,

> "A percentage plan, by its very nature does not seem to constitute a plan by which the debtors will contribute all disposable income to the plan because the debtor may retain a portion of disposable income if fewer than anticipated claims are filed."

\*   \*   \*   \*   \*   \*

for abuse of § 1329 is aptly illustrated by the decision in *In re Klus*, 173 B.R. 51, 59 (Bankr. D.Conn.1994), in which the court was decidedly equivocal about the standard to apply under § 1329:

> But even if there is a non-de minimis change of circumstances which would eliminate the application of res judicata, I share the concern of many courts that § 1329(a) should not be abused by repetitive modifications and the confirmation order should have a significant degree of finality. The code provides the court with sufficient flexibility to prevent such abuses. Therefore, while I agree with the *Perkins* line of cases that a substantial, unanticipated change of circumstances is not a threshold requirement for modification under § 1329(a), the absence of such a change should be a factor in the exercise of the court's discretion.... In the final analysis, I conclude that the court should only allow modification if the change of circumstances is unanticipated and substantial....

173 B.R. at 59. *See also In re Guernsey*, 189 B.R. 477, 482 (Bankr.D.Minn.1995), in which the court indicated that the approaches taken by the circuit courts in *Witkowski* and *Arnold* were not irreconcilable, finding that "the cases that support the respective positions, implicitly recognize that the proponent of a modified plan must demonstrate cause to obtain approval of a proposed plan modification over the objection of adversely affected parties." 189 B.R. at 481–82. The court also stated that

A percentage plan may also fail to comply with the requirement found in § 1325(a)(3) that it be proposed in good faith. Any plan which would allocate the windfall created by the failure of certain creditors to file timely proofs of claim to the debtor while unsecured creditors receive less than full payment on their claims does not demonstrate a "fundamental fairness to creditors."

*Martin*, 232 B.R. at 34 (quoting *Witkowski*, 16 F.3d at 746 n. 11). Because the order of confirmation in this case expressly provides that "[t]he term of the Plan is *60 months*" and that "[t]he debtors shall pay to the chapter 13 trustee the sum of *$1,486.00* per month for 59 months commencing *November 1, 1996*, and a balloon payment to the Trustee in the 60th month of the plan in the amount of $6,686.76," the Court finds that the plan is a pot plan.

> 11 U.S.C. § 1329 should not be allowed to be used by debtors to 'melt down' confirmed plans; nor should it be allowed to be used by disgruntled creditors to harass a debtor. Ordinarily, approval of proposed modifications should be based on substantial changes in circumstances, either of the debtor or of allowed claims, that were unforeseeable at the time of confirmation; and that either render the existing plan unfeasible, or that make possible substantially enhanced dividends to creditors.

*Id.* at 483. Finally, the court in *Guernsey* observed that a debtor should not be allowed to modify a plan to the amount already paid in circumstances where the hardship discharge would be applicable and where § 1329 would result in a greater discharge than would be available under § 1328(b). *Id.*

**12.** Another reason why confirmation orders need not be given res judicata effect is the debtor's ability to dismiss or convert his case. As the court stated in *In re Pearson*, 214 B.R. 156, 161 (Bankr.N.D.Ohio 1997),

> Although § 1327(a) states that both the debtor and the creditor are bound by the terms of a confirmed Chapter 13 plan, this is not literally true. The creditors are bound as long as the debtor complies with the plan. The debtor, however, is free to abandon the plan at any time, and the creditors cannot then force the debtor to comply with the terms of the plan.

Although the "Summary of Disbursements to be Made under the Plan" indicates that a 10% dividend will be paid to the holders of allowed unsecured claims, "this simply describes the result upon completion of the Plan assuming that the claims filed equal the claims scheduled." *Martin*, 232 B.R. at 34. Accordingly, the Court rejects the Debtors implicit argument that payment of the 10% dividend to unsecured creditors set forth in their plan satisfies their obligations under Chapter 13, without regard to what may be indicated on amended Schedules I and J, assuming they decide to seek permission to reduce the time for payment of the dividend to unsecured creditors or the Chapter 13 Trustee's Motion to Modify Plan is granted.

### B. *Post–Confirmation Property of the Estate*

To determine whether the Debtors can be compelled to modify their Chapter 13 plan and to use the net proceeds from sale of the Property to satisfy the claims of their unsecured creditors, including Mellon, the Court must examine two issues: 1) whether the proceeds of the sale of the Property are property of the Chapter 13 bankruptcy estate; and 2) whether, regardless of the status of the proceeds as property of the estate, the Debtors must choose between payment of the unsecured claims in full from the sale proceeds and receipt of a discharge or retention of the sale proceeds. Resolution of these issues hinges upon the definition of property of the estate in 11 U.S.C. § 1306; [13] the meaning of the vesting language in 11 U.S.C. § 1327(b); [14] and whether the modification of a plan under § 1329 and application of the "best interest" test of § 1325(a)(4) [15] permits a determination that the proceeds from sale of property that has vested in the Debtors is property of the estate for purposes of a modified plan. These issues raise the following question: For purposes of a modification under § 1329, does the Court revisit the issue of vesting and property of the estate, thereby, in effect, annulling the revestiture of the Property in the Debtors pursuant to the order of confirmation dated September 23, 1998?

A number of courts have articulated the different approaches to and advan-

---

**13.** Section 1306 provides the following:

(a) Property of the estate includes, in addition to the property specified in section 541 of this title.

(1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and

(2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

(b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1306.

**14.** Section 1327 provides in relevant part the following:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327.

**15.** Section 1325(a)(4) provides the following:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).

tages and disadvantages of defining property of the estate in Chapter 13 in light of § 1327(b). *See Fisher,* 203 B.R. 958, 961 (N.D.Ill.1997); *Rangel,* 233 B.R. at 194–95. This Court will not duplicate these efforts. The district court in *Fisher* summarized the approaches as follows:

> (1) upon confirmation, property of the estate becomes the debtor's property and the estate terminates; (2) upon confirmation, estate property transfers to the debtor, but the estate survives and includes some property acquired post-confirmation; and (3) no property is removed from the estate.

203 B.R. at 961 (citations omitted). In *Rangel,* Judge Hillman followed the court in *Fisher,* stating the following:

> In *City of Chicago v. Fisher,* supra, the court claimed to adopt the middle ground approach. In effect, however, it presented a fourth approach. In an effort to reconcile both §§ 1306(a) and 1327(b), the court concluded that the property of the estate which vests in a debtor at confirmation is that which is property of the estate as of the date of confirmation. Section 1306(a) then operates to replenish the estate post-confirmation until the case is closed converted or dismissed.
>
> \* \* \* \* \* \*
>
> This approach does reconcile §§ 1306(a) and 1327(b). Furthermore, it gives meaning to the language in §§ 347, 349, 704(9), 1302, 1305 and 1329. Although such a ruling would bring into the estate post-confirmation income and assets, it does not run afoul of § 348(f) which would exclude such assets from the Chapter 7 estate in the event of a good faith conversion. The automatic stay would enable a debtor to consummate a plan and would protect post-petition creditors....

*Rangel,* 233 B.R. at 197–98.

This Court shall follow Judge Hillman, particularly as the confirmation order employed in *Rangel* contains a vesting provision identical to the one present in the instant case. The Court finds the reasoning in *Rangel* persuasive, and a contrary approach would make the Chapter 13 practice in this district difficult and inefficient. However, the Court must consider whether upon conversion of the chapter 13 case to one under chapter 7 § 348(f)[16] would exclude the post-confirmation appreciation in value of property that was property of the estate at the commencement of the case, as opposed to post-confirmation lottery winnings, for example, from distribution to unsecured creditors.

In *Rangel,* the court did not have before it a motion to compel the debtor to modify his Chapter 13 plan, and, thus, did not have the precise issue before it. Rather, in *Rangel,* the debtor filed a motion for authority to sell his primary residence with the intention of using the sale proceeds to satisfy his obligations under his plan. The Chapter 13 Trustee objected to the sale "on the grounds that the Debtor has not amended his plan, proposed applying the equity in the Property toward the plan, filed an application for compensation for counsel or timely obtained authority to hire the broker." *Id.* at 193. Judge Hillman framed the issue as whether the debtor's property was property of the estate post-confirmation and, if not, whether court authorization to employ the broker was required. As indicated above, the court found that the residential property was not property of the estate and the debtor was not required to obtain court authorization to employ a real estate broker.

This Court must now determine the effect of the ruling in *Rangel* in circumstances such as those present here where the real property vested in the Debtors, but in selling the Property, the Debtors obtained cash proceeds attributable, in part, to the appreciation in the value of the property, which can be viewed as income

---

**16.** *See* note 21, *infra.*

and which are sufficient to satisfy the claims of unsecured creditors in full.[17] Arguably, in accordance with *Rangel*, the Debtors would be entitled to keep the sale proceeds in excess of the amounts required to satisfy Mellon's secured claim because the Property vested in the Debtors pursuant to both § 1327(b) and the order of confirmation.[18] In other words, the appreciation in value of the Property in the form of excess sale proceeds would belong to them free and clear of the claims of creditors pursuant to § 1327(c).[19] Under this scenario, although the Debtors may be required to file amended Schedules I and J and an amended Chapter 13 plan and to satisfy both the best interests and best efforts tests if they wish to reduce the time for payment, *Rangel*, 233 B.R. at 198; *Martin*, 232 B.R. at 38, the Court's inquiries would end with respect to the Chapter 13 Trustee's Motion to Modify Plan and Mellon's Motion to Modify Order.

This result, however, is antithetical to the results that would be achieved in the absence of a confirmed plan that vested the Property in the Debtors.[20] Moreover, there is something unsavory about Chapter 13 Debtors "stripping down" a mortgage under § 506(a) and (d) and receiving the "super" discharge provided by

**17.** Section 541(a) defines the bankruptcy estate as being comprised of "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

**18.** The court's specific holding in *Rangel* was that "as a result of the vesting language in the Order of Confirmation, the Property, including the equity above the mortgage and the Debtor's exemption, vested in the Debtor on confirmation and is no longer property of the estate. As such, the Debtor was not required to file an application to employ the Broker...." 233 B.R. at 198.

**19.** In *In re Talbot*, 124 F.3d 1201, 1208 n. 9 (10th Cir.1997), the court observed the following:

the Trustee argues in the alternative that even if the Talbots' residence was not property of the estate, the sales proceeds representing post-confirmation appreciation in value of the residence constitutes property of the estate pursuant to § 1306(a)(1). This is a dubious argument. *See Black v. United States Postal Service (In re Heath)*, 115 F.3d 521, 524 (7th Cir.1997) (holding that post-confirmation income that is not necessary to the fulfillment of the plan of reorganization does not become part of the bankruptcy estate). Because, however, the Trustee did not raise the issue below, the record is inadequate for this court to reach the merits of the Trustee's argument on appeal. For instance, there is no indication in the record that the appreciation in the value of the residence occurred post-confirmation, rather than during the period between the Talbots' filing of their petition and the confirmation of the Plan.

**20.** In *In re Anderson*, Nos. 587–13218, 587–03236, 1989 WL 222971 (Bankr.N.D.Cal. Sept. 8, 1989), the Chapter 13 Trustee filed motions to modify the debtors' confirmed Chapter 13 plans. The plans that had been confirmed by the court contained language to the effect that " '[P]roperty of the estate shall remain so after confirmation.' " 1989 WL 222971 at *1. The court, following *Arnold*, 869 F.2d at 242, determined that the appreciation in the value of property sold by the debtors was substantial and unanticipated. The court stated the following:

A literal reading of the Statute dictates that the confirmation tests set forth in Section 1325 must be reexamined in considering the proposed modification. 11 U.S.C. § 1329(b)(1). What modification under Section 1329 requires is a new confirmation analysis under Sections 1322(a)–(c) and 1325(a). Of particular interest is the "best interest" test of Section 1325(a)(4) which requires that creditors must receive at least as much as they would be paid in a liquidation under Chapter 7 and the "ability to pay test" set forth in Section 1325(a)(6).
***

[T]he sale of each of the debtor's residences generated proceeds far in excess of liens and the allowed exemption. For the unsecured creditors of both Clark and Anderson this means that they would now receive far less under the present plan than what they would receive in liquidation.

*Id.* at *5. The court's conclusion was buttressed by the statement in *Arnold* that " '[w]hen a debtor's financial fortunes improve, the creditors should share some of the wealth.' " *Id.* (quoting *Arnold*, 869 F.2d at 243).

§ 1328(a) while walking away with substantial cash proceeds due to the appreciation in value of their Property, without amending their plan to satisfy the claims of their unsecured creditors. While the Debtors emphasize the binding effect of their confirmed plan, the Chapter 13 Trustee is focused on the unfairness of such a result, because, after all, the purpose of bankruptcy, regardless of the chapter, is to pay unsecured creditors at least what they would receive in a Chapter 7 liquidation. *See* 11 U.S.C. §§ 1129(a)(7), 1225(a)(4) and 1328(b). Putting aside the various inconsistent Code sections, the problems created by the vesting language in § 1327(b) and the order of confirmation used in this case, and hairsplitting arguments about what constitutes property of the estate in Chapter 13, the spectacle of the Debtors profiting while in bankruptcy is disconcerting and may be indicative of a bad faith manipulation of the Code.

### C. *The Good Faith Requirement and Best Interest Test*

■ When a plan is modified under § 1329, the Debtors' modified plan, among other requirements, must be proposed in good faith and must satisfy the best interests test. How is the best interest test applied? Under § 1325(a)(4), what is the effective date of the plan—the petition date; the date the debtor begins making payments; or the date of the modified plan? Does the Court consider property of the estate at the commencement of the case, or only property that has not vested in the Debtors at the time of confirmation? What property values should be used—the

values attributable to the property at the commencement of the case or the current value? With respect to the instant case, did the cash attributable to the appreciation in value of the Property vest in the Debtor pursuant to the confirmation order? In applying the best interest test of § 1325(a)(4), should the Court consider all property of the Debtors at the time of the proposed modification as "property to be distributed under the plan," regardless of whether it may have vested in the Debtors under § 1327? What is the relationship between § 1325(a)(4) and § 348(f)? [21]

■ In his treatise, Judge Lundin states that

[t]he better interpretation is that "the effective date of *the plan*"is the effective date of the plan as modified. This interpretation gives effect to § 1329(b)(2) and recognizes that the passage of time between confirmation of the original plan and confirmation of the modified plan does change the facts and circumstances of a Chapter 13 case. Those changes may benefit the debtor or benefit creditors, but the tests for confirmation in §§ 1322 and 1325 that are applied at confirmation of a modified plan under § 1329(b)(1) should be applied to the facts as they appear at the time of confirmation of the modified plan.

Keith M. Lundin, *Chapter 13 Bankruptcy*, § 6.44 at p. 6–133 (2nd Ed.1994 & Supp. 1996). In other words, the best interest or liquidation value test of § 1325(a)(4) is applied as of the effective date of the plan as modified. *In re Walker*, 153 B.R. 565,

---

**21.** (f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuations of property and of allowed secured claims in the chapter 13 case

shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

11 U.S.C. § 348(f).

568–69 (Bankr.D.Or.1993). *See also In re Guentert,* 206 B.R. 958, 963 (Bankr. W.D.Mo.1997) ("While there is no specific Code provision so providing, it stands to reason that any property that has become property of the estate post confirmation [sic] must be calculated in the best interest of creditor's test before any plan modification can be confirmed."). *But see Forbes v. Forbes (In re Forbes),* 215 B.R. 183, 189 (8th Cir. BAP 1997) ("the effective date of the plan is neither determined or redetermined at the point of postconfirmation modification."). *Cf. In re Green,* 169 B.R. 480, 482 (Bankr.S.D.Ga.1994) (the "effective date of the plan" is the date the petition was filed for purposes of measuring the amount which would have been paid to unsecured creditors from a hypothetical liquidation of the debtor's property, conversion does not change the filing date and assets acquired postpetition will not be used to determine a hypothetical dividend to creditors under § 1325(a)(4)).

In *Walker,* a secured creditor whose claim had been bifurcated, objected to the debtor's motion to modify her plan, arguing that the appreciation in the value of the property should inure to its benefit. The debtor argued that valuation of the property for purposes of the best interests test is set at the value of the property on the date the petition was filed. Relying upon the legislative history,[22] the court determined that the best interests test should be applied as of the effective date of the modified plan.

In *Forbes,* the court articulated a paradigm for Chapter 13 plans[23] and, in part as a result, excluded a postpetition cause of action from "property to be distributed under the plan" for purposes of the liquidation analysis of § 1325(a)(4). It stated the following:

[T]he effective date of the plan is neither determined nor redetermined at the point of postconfirmation modification. The courts in [*Hollytex Carpet Mills v.] Tedford* [691 F.2d 392, 393 (8th Cir. 1982)] and [*In re] Statmore* [22 B.R. 37, 38 (Bankr.D.Neb.1982)], which were faced with application of the best interests of creditors test in the context of postconfirmation modification, expressly

---

**22.** The legislative history provides the following:

In applying the standards of proposed 11 U.S.C. § 1325(a)(4) to the confirmation of a modified plan, "the plan" as used in the section will be the plan as modified under this section, by virtue of the incorporation by reference into this section of proposed 11 U.S.C. § 1323(b). Thus, the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan.

153 B.R. at 568 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 431 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6386, 6387).

**23.** In *Forbes,* the circuit court observed the following:

A debtor's plan in bankruptcy is the vehicle by which he or she achieves fiscal rehabilitation. For so long as it exists in bankruptcy, there is, at any given time, only one effective plan; the plan is an [sic] unitary constant. Although the Bankruptcy Code speaks of "the plan" and "the modified plan," it speaks of a solitary construct. This can only be so, and is inherent in the Code, for the Code speaks of postconfirma-

tion plan alterations exclusively in terms of "modification" thereof. See 11 U.S.C. § 1329. The Code thus contemplates change to a plan in bankruptcy in evolutionary terms, incorporating new change into a preexisting basis—an original or previously modified plan. Thus, the Code states, in keeping with the paradigm of the plan as a unitary constant and solitary construct, that "[t]he plan as modified becomes the plan...." 11 U.S.C. § 1329(b)(2). An individual who grows from infancy to adulthood alters significantly in the process and yet retains her or his identity throughout; so, too, does a plan retain its identity and constancy throughout its evolution and development in bankruptcy. Although it may change with time, it is, in essence, that which it always was—the plan.

\*\*\*

The Bankruptcy Code does not provide for the "confirmation" of a modified plan; rather, the plan as modified becomes the plan if it is not disapproved. Therefore, a plan is effective when confirmed, and a plan modification is effective when approved.

215 B.R. at 188.

rejected the argument that the language of Section 1325(a)(4) refers to a later date.... This is so, for, as we emphasized in preface to this discussion, there is only one plan to which the Code refers. Regarding the effective date of the plan, there is only one plan. The effective date is not altered by modification of the plan for the modified plan remains, ever constant, the plan.

215 B.R. at 189 (citations omitted).[24]

The Court finds the reasoning of *Walker* to be persuasive. Although Judge Lundin recognizes that there is a potential for consecutive motions from unsecured creditors to continuously seek to compel debtors to modify their plans to account for appreciation in the value of property, he acknowledges that " 'the effective date of *the plan'* is the effective date of the plan as modified." Lundin, *supra,* § 6.44 at p. 6–133.

■ Assuming for the sake of argument that this Court were to apply the best interest test to an amended plan to be submitted by the Debtors, would the excess proceeds from the sale be available to unsecured creditors in a hypothetical liquidation? The answer depends on whether the excess proceeds would be available in the converted case to the Chapter 7 Trustee. Because § 541(a)(6) makes the proceeds and profits of property of the estate also property of the estate, because the Property was property of the estate at the commencement of the case, and because the Debtors are in possession and control of the excess proceeds from the sale of the Property, the Court finds that if the Debtors were to convert their case to a case under Chapter 7 in good faith, a Chapter 7 Trustee would be able to obtain the excess proceeds for distribution to the creditors of the Debtors' estate. Accordingly, the same result should pertain to a hypothetical liquidation. Thus, the Debtors' deci-

sion to withhold the excess proceeds on the grounds that the Property vested in them at confirmation while prepaying the dividend to unsecured creditors would not satisfy the best interest test of § 1325(a)(4).

A number of courts that have considered post-confirmation sales of property that has appreciated postpetition have concluded that the debtor must make the proceeds available to unsecured creditors. In *In re Suratt,* No. 95–6183–HO, 1996 WL 914095 (D.Or. Jan. 10, 1996), the Chapter 13 trustee sought to compel a modification of a plan which would require the debtor to pay all nonexempt proceeds from the sale of his residence into his plan, thereby increasing the dividend payable to unsecured creditors from 5% to 27%. The court rejected the debtor's argument that because the property that he sold had vested in him upon confirmation all post-confirmation sale proceeds must also vest in him to the exclusion of the trustee. Although the court followed the *Arnold* line of cases, determining that the order of confirmation was res judicata as to issues of adequate protection, lack of equity, and necessity of the property to an effective reorganization of the debtor's affairs, the court found that the realization of substantial proceeds from the sale of the debtor's residence was unanticipated and a substantial change in the debtor's circumstances. The court stated the following:

> The logical extension of the debtor's argument here is that there must be a provision in all Chapter 13 plans requiring post-confirmation sale proceeds from property originally part of the estate to be paid to creditors, in order to preclude the debtor from receiving those funds. There is no such requirement in the Bankruptcy Code, nor has any court imposed such a requirement. 11 U.S.C. § 1329(a) is intended, in part, to provide the protection the debtor claims is miss-

24. In a footnote, the court in *Forbes* relied on § 348(f)(1)(A) in support of its conclusion: It is also possible that the implication that posteffective postpetition property is includ-

ed for purposes of the best interests of creditors test, at any point, has been overruled by the 1994 amendment to Code Section 348(f)(1)(A).

ing. Its purpose is to protect the creditors' rights to a debtor's increased income, including from proceeds from the sale of property that has appreciated in value, post-confirmation.

1996 WL 914095 at *3.

Similarly, in *In re Solis,* 172 B.R. 530, 533 (Bankr.S.D.N.Y.1994), the debtor, a physician, submitted a plan which provided for a 10% dividend to unsecured creditors from income earned from the debtor's medical practice. The plan, according to the court, effectively stripped the medical practice of creditors' liens. The debtor sold his medical practice for $40,000, payable in installments and moved to Florida where he joined a community health center and received an undisclosed salary. The debtor moved pursuant to 11 U.S.C. § 105(a) "essentially for a judgment declaring the sale proceeds of his medical practice were not property of the estate." The Chapter 13 Trustee objected and moved to modify the plan pursuant to § 1329. The court stated the following in ordering modification:

> Although section 1327(a) binds the debtor and the creditors, a confirmed plan may be modified at any time after confirmation before payment is completed.... To rule otherwise would render section 1329 meaningless. Section 1327(a) does not limit modification, rather, it is a "statutory description of the effect of a confirmed plan or a confirmed modified plan."
>
> \*     \*     \*     \*     \*     \*
>
> If the plan is not modified the debtor will receive a $40,000 windfall while his unsecured creditors receive only 10% of their claims. That would be a perversion of the Code's good faith provision (section 1325(a)), and ability to pay test (section 1325(b)).

172 B.R. at 533 (citations omitted). Thus, the court rejected the debtor's argument that his medical practice, which had vested in him pursuant to § 1327(b) and which he had sold after confirmation, was beyond the reach of creditors. *Cf. In re Anderson,* No. 587–03218–JRG, 1989 WL 222971, \*4 (Bankr.N.D.Cal.1989) ("If the effect of revesting was to deny a Court power over property of the debtor following confirmation it would render Section 1329 a nullity from a practical point of view.").

The courts in *Solis* and *Suratt* did not focus on the application of the best interest test. Rather the courts appeared to be motivated by the inequity of permitting the debtors to do better than their creditors. Thus, the court in *Solis* referred to the perversion of § 1325(a)(3) that would result if the debtor were permitted to retain the proceeds from the sale of his medical practice.

While there is ample support for compelling the Debtors to amend their plan to satisfy the claims of unsecured creditors in full, the Debtors' plan implicitly contemplated the sale of the Property and use of the proceeds to satisfy Mellon's secured claim. Moreover, the Debtors advised their unsecured creditors in their plan that they would be reducing their plan payments in the event Mellon's secured claim was prepaid. Mellon agreed to this treatment in a Stipulation approved by the Court prior to confirmation, and the remaining two unsecured creditors did not object to their treatment under the Debtors' plan. Moreover, the Chapter 13 Trustee, who admittedly is not the present Chapter 13 Trustee, submitted the form of confirmation order that was utilized by the Court, which order paraphrases § 1327(b) and (c). Thus, where the sale of the Property was implicitly contemplated by the Debtors, and their creditors were so apprized, why should the creditors receive new rights now when the confirmed plan fixed their existing rights in 1998?

The Court concludes that resolution of these multifaceted issues cannot readily be resolved by attempting to harmonize the various provisions of Chapter 13 of the Bankruptcy Code. The binding effects of confirmed plans, the purposes of

the proposed modifications and the unique circumstances of each case must be weighed to reach an equitable result in each case. The backdrop for the Court's decision is the recognition that a confirmed plan is a contract binding on creditors and that the discharge of debts is a privilege, not a right. Overriding all other concerns is the issue of good faith. In view of congress's intent in enacting chapter 13 to encourage debtors to repay their debts to the best of their ability, it would be anomalous for this Court to determine that the Debtors can retain the excess proceeds from the sale of the Property without satisfying their unsecured claims.

If the Debtors modify their plan to provide for full payment of unsecured claims, there is no question that the best interest test of § 1325(a)(4) would be satisfied. If they modify their plan to reduce the time for paying unsecured creditors, without using the sale proceeds attributable to the appreciation in value of their Property to pay more than a 10% dividend to unsecured creditors, the Court finds that the best interest test of § 1325(a)(4) would not be satisfied, and, moreover, their "modified plan" would not be proposed in good faith. In other words, the Debtors would be engaged in a bad faith manipulation of the Bankruptcy Code, if they insist on retaining the excess sale proceeds *and* obtaining the broad discharge afforded by § 1328(a).

## IV. CONCLUSION

In accordance with the foregoing, the Court hereby grants the Chapter 13 Trustee's Motion to Modify Plan and Mellon's Motion to Modify Order in part. The Court denies Mellon's Motion to the extent Mellon seeks to compel conversion if the case becomes ripe for dismissal.