**In re Marsha Eileen WALKER, Debtor.**

**Bankruptcy No. 389–34389–H13.**

United States Bankruptcy Court,
D. Oregon.

April 21, 1993.

Kelly Sutherland, Portland, OR, for Fleet Mortg. Corp.

Eric Olsen, Salem, OR, for debtor.

Robert W. Myers, trustee.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon an objection to the debtor's proposed modified plan dated July 15, 1991. The objecting creditor is Fleet Mortgage Corp. ("Fleet") represented by Kelly Sutherland of Portland, Oregon and the debtor is represented by Eric Olsen of Salem, Oregon.

Fleet holds a note secured only by a mortgage against the debtor's principal residence. This case was commenced by the filing of a petition in bankruptcy under chapter 13 on September 25, 1989. According to the debtor's schedules, the amount of the debt owed to Fleet at the time the petition was filed was $49,000 and the value of the collateral, the residence, was also $49,000. The debtor now admits that Fleet's claim was $56,160.43 at the time of the filing of the petition.

The debtor's original plan was not dated but was filed with the court on October 10, 1989. That plan established the value of Fleet's collateral as $49,000 and proposed that a 70% dividend be paid to the holders of allowed unsecured claims.

The plan, which showed the value of the collateral was $49,000, was confirmed without objection on December 20, 1989 with the sole amendment being to add a date of October 10, 1989 to the plan. Fleet filed a claim for $56,160.43. Thereafter, on August 1, 1991 the debtor filed a plan dated July 15, 1991. The only relevant change in the July 15, 1991 plan was to reduce the dividend to be paid to the holders of allowed unsecured claims from 70% to 0%. The debtor asserts that the dividend was reduced because of the allegedly unanticipated amount of Fleet's deficiency claim.

Fleet objected to the July 15, 1991 plan on the sole ground that the plan did not provide that holders of allowed unsecured claims would receive at least as much as they would in a chapter 7 liquidation.[1] The factual basis for this objection is that the real property that secures the obligation to Fleet had appreciated after the filing of the petition. Fleet argued that the post-petition appreciation inures to the benefit of the estate—not the debtors. Thus, according to Fleet, the modified plan of July 15, 1991 could not be approved by the court.

Fleet argues that the residence is now worth $63,000. If this is correct the debtor's present equity in the property, the value less the allowed secured claim ($63,000 − $49,000 = $14,000), does not exceed the debtor's $15,000 homestead exemption.

Initially, it must be noted that 11 U.S.C. § 506(a) provides that:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's

---

1. In a memorandum of law dated October 4, 1992, Fleet seems to argue that the modified plan of July 15, 1991 should not be approved on the ground the deficiency claim of Fleet was known or should have been known to the debtor on the date of the petition. Based on this, Fleet seems to argue that the modified plan should not be approved because it was not caused by a substantial change in the debtor's financial circumstances that could not have been anticipated. Fleet has not pursued this point and has offered no evidence that the debtor attempted to mislead the court or creditors in filing the schedules as she did. Thus, the court must conclude that the debtor's error was unintentional and not a basis to disapprove of a modified plan.

interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

According to ¶ 2(b) of the debtor's plan dated October 10, 1989, which was confirmed without objection:

The claims of each of the creditors listed above shall be allowed as a secured claim in the amount of the value of the security....

The confirmed plan showed the value of Fleet's security as $49,000. Thus, under § 506(a), Fleet's allowed secured claim is $49,000 and its allowed unsecured claim is the difference between its entire claim ($56,160.43) and its secured claim ($49,000) or $7,160.43. Fleet apparently does not dispute this fact.

■ The debtor first argues that the valuation of the property for purposes of the "best interests" test is set at the value of the property on the date the petition was filed. The court disagrees. Pursuant to 11 U.S.C. § 1329(b)(1), a modified plan must meet the requirements of § 1325(a). One of the requirements of § 1325(a) is found in subsection (a)(4) which requires that:

[T]he value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less that the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

The legislative history to 11 U.S.C. § 1329(b) states, in relevant part, the following:

In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, "the plan" as used in the section will be the plan as modified under this section, by virtue of the incorporation by reference into this section of proposed 11 U.S.C. 1323(b). Thus, the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan. H.R.Rep. No. 595, 95th Cong., 1st Sess.

431 (1977) U.S.Code Cong. & Admin.News pp. 5787, 6386, 6387.

Thus, it is apparent that the debtor's first argument must fail and the best interests test should be applied as of the effective date of the modified plan.

■ The debtor next argues that she would be entitled to claim a homestead exemption in her residence if this case were liquidated under chapter 7 on the date of the modified plan. Since there is no nonexempt equity for the holders of unsecured claims she argues that the modified plan meets the best interest test.

Fleet responds that if this case were filed under chapter 7 today, the debtor could not "strip down" its lien due to the recent Supreme Court ruling in *Dewsnup v. Timm,* — U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

It is true that if the debtor filed a chapter 7 petition today, she could not strip down Fleet's claim. However, this ignores the fact that the debtor filed her petition under chapter 13 nearly 3 and ½ years ago. Fleet's claim was determined and, under *In re Hougland,* 886 F.2d 1182 (9th Cir.1989), bifurcated under § 506(a) into 2 claims: an allowed secured and an allowed unsecured claim. Pursuant to § 502(b), all claims are determined as of the date of the filing of the petition. Thereafter, and as long as this case remains open, Fleet is the holder of 2 distinct claims. In fact, it is only because Fleet holds an unsecured claim that it has standing to assert that the modified plan in question fails to comply with § 1325(a)(4) (which only applies to allowed unsecured claims). Thus, it is nonsensical for Fleet to argue that the modified plan does not propose to pay its allowed unsecured claim what it would be paid under chapter 7 because if this case were liquidated under chapter 7 today, Fleet would not hold an unsecured claim.

One of the flaws in Fleet's reasoning is that § 1325(a)(4) does not specify that all creditors must receive what they would receive if a chapter 7 case had been filed by this debtor on the effective date of the plan. Rather, § 1325(a)(4) refers only to

the rights of holders of allowed unsecured claims.

■ Further, § 1325(a)(4) does not necessarily contemplate that the court consider what would happen if the debtor dismissed the instant chapter 13 case and filed a new chapter 7 case on the effective date of the plan. Rather, it seems more appropriate to consider what would happen if the case were converted to one under chapter 7. As previously discussed, claims are determined as of the filing of the petition by virtue of § 502. Further, conversion does not change the date of the petition for purposes of claim determination. See § 348. Thus, if this case were converted to one under chapter 7, Fleet would continue to hold an allowed secured claim for $49,000 (reduced by any payments received under the plan) and an allowed unsecured claim

for $7,160.43 (similarly reduced). Ignoring for a moment Fleet's claim that the appreciation inures to the estate's benefit, the debtor would be entitled to claim a homestead exemption in the residence. Thus, Fleet would receive nothing on account of it unsecured claim.

■ Fleet also argues that the debtor's failure to list the residence as exempt in her schedules deprives her of the right to claim it exempt at this time. This argument fails. A debtor in chapter 13 does not claim exemptions. Rather, in chapter 13, a debtor lists property he would claim exempt if the case were filed under chapter 7. Thus, the chapter 13 schedules in this regard are merely informative and do not constitute a judicial admission as Fleet seems to argue.[2]

---

**2.** In a Chapter 13 case exemptions are neither allowed nor disallowed. Chapter 13 does not contemplate liquidations of property. In fact § 1327(b) provides that confirmation vests all of the property of the estate in the debtor. § 1327(c) provides that such property vesting in the debtor is free and clear of any claim or interest of any creditor except as otherwise provided. Thus if the plan or the order of confirmation is silent on the subject, all of the property, exempt or not, vests in the debtor. As a result, after confirmation it is immaterial whether the property would be exempt from the claims of a trustee in a liquidation under Chapter 7.

The purpose of requiring the filing of a schedule of exempt property is so that the creditors and the court can determine what property would be exempt were the assets to be liquidated in a Chapter 7. This information is necessary to determine whether the plan meets the test for confirmation prescribed by § 1325(a)(4). See *In re Lindberg,* 735 F.2d 1087, 12 B.C.D. 81, 10 CBC 2d 1255 (C.A.8, 1984); *In re Mitchell,* 80 B.R. 372 (Bankr.W.D.Tex.1987) at 377; and *In re Smith,* 143 B.R. 912 (Bankr. D.Neb.1992).

In Chapter 13, the plan must be confirmed if it meets the statutory standards set forth in § 1325. One of these standards is the best interest test of subsection (a)(4). In order to determine whether this test is met it is necessary to determine, hypothetically, what the dividend to creditors would be if the debtor's estate were liquidated in a Chapter 7 case. To make this hypothetical calculation it is not only necessary to determine the value of the property of the estate but what portion of the estate would be exempt. It would only be the value of the property, less the exemptions, which would be

available to creditors. The debtor's claim of exemptions is a necessary element in making this determination.

If the trustee or the unsecured creditor believes that the plan does not satisfy the test of § 1325(a)(4), the appropriate procedure is not to object to the claim of exemptions but to object to confirmation on the ground that the plan does not meet this test. Included in such an objection could be a contention that the property shown as exempt in Schedule C filed by the debtor would not in fact be exempt in a Chapter 7 case and therefore the value of such property must be included in the calculation to determine what dividend creditors would receive in a hypothetical Chapter 7 liquidation.

It is pointless in a Chapter 13 case to enter an order granting or denying a claim of exemption when, if the plan is confirmed, the property will vest in the debtor free of claims of creditors and there will be no liquidation. If the plan is not confirmed the debtor may be given time to file a modified plan. If not, the case will be dismissed (in which case the question of exemptions becomes moot) or the case will be converted to Chapter 7 in which case the Chapter 7 trustee will object to improper claims of exemption. If, in the Chapter 13 case, the court had entered an order approving a claim of exemption, should this be binding on the Chapter 7 trustee in a later conversion to Chapter 7? This would not seem appropriate since the Chapter 7 trustee has not had an opportunity to object.

Other problems result from Fleet's argument: Would a creditor who failed to object to the claim of exemption within 30 days of the § 341 meeting be barred from thereafter objecting to confirmation on the ground that the plan did not meet the test of § 1325(a)(4)? What if the debtor was granted an extension of time beyond

Also, it appears the debtor had no equity to claim exempt at the time the petition was filed. Thus, it would be pointless to claim such an exemption and the law does not require parties to perform pointless acts.

■ Fleet finally argues that the post-petition appreciation inures to the benefit of the estate and not the debtor. Therefore, Fleet argues, the debtor cannot claim an exemption in property in which she holds no interest. Fleet relies on *In re Hyman*, 123 B.R. 342 (9th Cir. BAP 1991) in support of this argument.

Since Fleet's memorandum was filed, the Ninth Circuit Court of Appeals has issued its opinion affirming the result in *Hyman*. See *In re Hyman*, 967 F.2d 1316 (9th Cir. 1992).

In *Hyman*, a chapter 7 case, the debtor claimed a $45,000 homestead exemption under California law. The trustee did not object to the claim of exemption but sought to sell the home after it appeared the property had appreciated in value to the point where there would be some equity beyond the exemption amount for unsecured claimants. The debtor objected arguing that the property was exempt and could not be sold by the trustee. The Court of Appeals held that the post-petition appreciation in the value of the home beyond the exemption amount inures to the benefit of the estate—not the debtor.

The instant case does not present the same issue. In this case, the value of the property was less than the amount of the debt at the time the petition was filed. Today, the value of the property ($63,000) exceeds both the allowed secured claim

($49,000) and the amount of the debt ($54,-400). The excess, however, is only $14,000, at most ($63,000 − $49,000). Under Oregon law, as previously noted, this excess would all be exempt.

*Hyman* did not hold that a debtor's exemption is limited to either the amount of the equity in the home at the time the petition was filed or the statutory maximum, whichever is lesser. Further, this court does not believe that is the law. As previously stated, the debtor has not yet been required to claim an exemption in the property. It is reasonable to assume that if she were required to do so today, she would claim the maximum allowed by law. In that event, if the case were converted to one under chapter 7, Fleet and all other creditors holding unsecured claims would receive nothing on account of this asset.

In sum, the result would be different if the debtor had filed a chapter 7 petition today. In that event, *Dewsnup* would control and the debtor could not strip down Fleet's claim. The petition, however, was filed 3 and ½ years ago and under chapter 13. As a result, Fleet's allowed secured claim and its allowed unsecured claim were established as of 3 and ½ years ago. From that point forward in this case, Fleet wears 2 hats: one as the holder of a secured claim and the other as the holder of an unsecured claim. The analysis of a hypothetical liquidation under chapter 7 pursuant to § 1325(a)(4) does not change this fact. In other words, except as provided in § 506(b) (which is inapplicable in this case), claims do not change during the life of a bankruptcy case. That being the case, this plan meets the best interest test and Fleet's

---

the 30 day period in which to file the plan so that the creditor did not know within the 30 days whether or not the plan, (which has not yet been filed) would comply with § 1325(a)(4)? Would the creditor have waived the right to object to confirmation for failure to timely object to the claim of exemptions? If the plan provided for dividends to unsecured creditors of 100% would there be any purpose served in objecting to the debtor's claims of exemption? What if the debtor later filed a modified plan calling for a smaller dividend which might not meet the best interest test?

None of these questions arise if it is recognized that the only reason for requiring a statement of exemptions in chapter 13 is in order that the court can determine hypothetically what the dividend to creditors would be in a Chapter 7 liquidation in order to determine whether the debtor's plan meets the requirement of § 1325(a)(4).

To the extent F.R.B.P. 4003 requires a chapter 13 debtor to file a claim of exemptions and creditors to object to that claim within a given time, it is inconsistent with the Code and must fail.

objection must be overruled.[3] The court will enter an order approving the modified plan dated July 15, 1991.

3. In this case, the property has increased in value since the filing of the petition. What would happen if the debtor were to seek a modification of the plan because the value of the property had decreased? If the creditor's allowed secured claim would increase because of an increase in the value of the property, it would seem to follow that the allowed secured claim should decrease if the value of the property were to decrease. For example, in the case of improvements on real property or other depreciable property, if the property has a value of $100,000 at the time of filing, a creditor secured by the real property and improvements has an allowed secured claim of $100,000 if the debt equals or exceeds that sum. It would not make sense that the debtors could have a later modified plan approved which reduced the allowed secured claim because the value in the meantime had declined because of depreciation, physical damage or other cause.