**In re Terri MORGAN, Debtor.**

**No. 01–22328–DK.**

United States Bankruptcy Court,
D. Maryland,
at Greenbelt.

Sept. 17, 2003.

Richard L. Gilman, Gilman & Edwards, LLC, Stephen J. Papermaster, Papermaster and Weltman, Landover, MD, for Debtor.

### *MEMORANDUM OF DECISION*

DUNCAN W. KEIR, Bankruptcy Judge.

Before the court is the Motion for Reconsideration filed by the Chapter 13 Trustee ("Trustee") seeking reversal of the court's March 3, 2003 Order granting modification of Debtor's chapter 13 plan. The parties have adequately briefed their positions in their pleadings and the court finds that a hearing upon the instant motion for reconsideration would not aid the decisional process.

Debtor filed this bankruptcy case on October 9, 2001 and filed her Schedules and Chapter 13 Plan shortly thereafter. On Schedule A, Debtor listed the value of her real property (the "Property") as $135,990 and attached a copy of the value information contained in the database of the Maryland Department of Assessments and Taxation, from which Maryland real property tax assessments are based. On Schedule D, Debtor listed two secured creditors holding liens on the Property as Montgomery County, holding a claim of $1,136.05 and Washington Mutual Bank

having a secured claim of $134,000, including an arrearage of $13,500. On Schedule C, Debtor listed the remaining equity in the Property ($853.95) as an exemption.

Debtor's Chapter 13 Plan (the "Plan"), confirmed on March 27, 2002, provided for 60 monthly payments of $490.00, for total funding of $29,400.00. The Plan further provided that both Montgomery County and Washington Mutual Bank would retain their liens on the Property, with the prepetition arrears being paid in full through the Plan and the post-petition payments paid outside of the Plan. The Order Confirming Plan specifically provided that property of the estate would not revest in Debtor until discharge or dismissal.

Six months after confirmation, on October 28, 2002 and November 8, 2002, respectively, Debtor filed a notice of intention to sell the Property and a motion to sell the Property. In those pleadings, Debtor requested authority to sell the Property to a third-party for the amount of $193,000.00. In the motion to sell, Debtor stated that the payoff amount to Washington Mutual Bank (hereinafter "Mortgagee") would be $154,860.17, and requested that the court permit the sale with liens attaching to the proceeds.[1]

Trustee filed a response to the Debtor's notice of intent to sell, stating that he had not received proper service, however, he did not object to the sale on the condition that the proceeds of the sale, after payment to lienholders (not to include prepetition arrears), be turned over to Trustee for funding the Plan.

On November 20, 2002, the court entered an Order Approving Sale (the "Sale Order"), which permitted the sale of the Property provided that the liens on the

---

1. Debtor's motion to sell stated that Debtor believed Washington Mutual to be the only lienholder and no mention was made of a lien in favor of Montgomery County.

Property were satisfied and that the settlement officer was to "remit directly to the Chapter 13 Trustee the lesser of: the remaining balance due upon the confirmed Chapter 13 plan,[2] or the total remaining net proceeds...." The Sale Order further provided that the Plan would be modified (the "Modified Plan") so that the debt to Mortgagee would be paid outside of the Modified Plan from proceeds of the Property.[3]

In accordance with the Sale Order, the Property was sold and after payment of associated costs and liens on the Property, the closing agent remitted all of the net proceeds in the amount of $22,373.22 to Trustee. Debtor immediately filed a motion requesting the court to enter an order modifying the plan by crediting the pre-petition arrearage paid to Mortgagee at settlement against the funding of the plan and ordering that Trustee refund to Debtor from funds received by the Trustee from the settlement officer, an amount that Debtor argued exceeded the remaining Plan balance.[4] Debtor argued that prior to the sale of the Property, the remaining balance on the Plan was $26,250.00. Debtor further argued that the pre-petition arrearage portion of the

mortgage pay-off at settlement should be a deduction from the remaining Plan balance, as Trustee would not have to distribute those funds to the Mortgagee.

Trustee opposed Debtor's motion by a brief response, questioning the court's authority to modify the Plan by the Sale Order, and arguing again that the pre-petition arrearage amount of the Mortgage's pay-off balance should have been routed through Trustee. At a hearing upon the Debtor's Motion, the court granted the relief sought by Debtor and ordered Trustee to refund $11,557.92 to Debtor.

Trustee has now filed the instant motion for reconsideration. Trustee argues that the court's order approving the modification of the plan requested by the Debtor and ordering the refund of $11,557.92, approved a modification of the plan in violation of the "best interest test" set forth under Section 1325(a)(4) of the Bankruptcy Code.

Although not specifically requested in the form of motion, Debtor's initial motion to approve sale required a modification of the plan. The Property to be sold was property of the estate, having not revested

2. The remaining balance due upon the plan is the total of the sixty monthly payments of $490.00 each (as required by the plan), minus amounts paid by Debtor to Trustee to date.

3. The court granted Debtor's request to satisfy the balance due to the Mortgagee from the proceeds of sale at the real estate settlement. In doing so, the court denied the Trustee's demand that the portion of the Mortgagee's balance due, which equaled the pre-petition installment arrearage, be sent to Trustee by the settlement officer. The Trustee only makes periodic distributions to creditors rather than remitting funds as soon as received. To route a portion of the pay-off of the mortgage balance via the Trustee would create an impracticality that would defeat the sale. Settlement officers routinely cannot disburse monies received from Buyer's purchase mon-

ey lender, unless the settlement officer pays off the Seller's encumbering liens thus clearing title of such encumbrances as required by Buyer's contract and Buyer's purchase money lenders.

4. Where no modification request is made, this court has already held that the required funding level of a confirmed plan is not automatically reduced by amounts paid directly to secured creditors from a disposition of an interest in estate real property by refinancing. However, proceeds received by the Trustee from the settlement officer were credited against the debtor's funding obligation. The court concluded upon facts very similar to those in the instant case, that no refund was due to the debtor. *In re Bacon*, 274 B.R. 682 (Bankr.D.Md.2002)(Mannes, J.).

under the Order of Confirmation because the requested sale was to take place before Debtor received a discharge in the Chapter 13 case. The remaining unpaid balance of the pre-petition mortgage arrearage was to be paid at the time of the consummation of the sale, rather than by periodic distribution from Trustee [5] and the source of the payments was to be from proceeds of the Property, rather than from periodic deductions from wages. All of these changes altered terms of the confirmed Plan. It was for this reason that in the Sale Order, the court recognized the consequent plan modification and approved it. The payment to Trustee by the settlement officer of all net proceeds of the sale up to the remaining unpaid funding of the plan was in accordance with that Sale Order.

The Debtor's subsequent motion to further modify the plan by reducing the amount to be paid into the Plan and requiring the refund was approved by this court, Trustee not having raised what has become the pivotal issue in this dispute. However, Trustee's Motion for Reconsideration of the approval of the Debtor's requested plan modification should be considered by the court under Federal Rule of Bankruptcy Procedure 9023, incorporating Federal Rule of Civil Procedure 59. The motion was filed within 10 days of the entry of the Order approving the Debtor's requested plan modification and Trustee raises an important issue of law that may be applicable to numerous cases before this court.

 question that must be decided by this court in considering a plan modification is whether the liquidation analysis required by Section 1325(a)(4) of the Bankruptcy Code should be performed as of the time of the requested modification, or whether the original analysis done as of the date of confirmation of the original plan remains applicable. Trustee asserts that case law, legislative history, and principles of equity support his position that creditors are entitled to receive as much as they would in a chapter 7 if the liquidation happened on the day of the modification. Debtor responds that the test must be applied as of the original date of confirmation, thus allowing Debtor to benefit from appreciation in estate property during the pendency of the Chapter 13 case, even after modification of the Plan.

Section 1329(a) provides that the Chapter 13 trustee, unsecured creditors or debtor may request modification of a confirmed chapter 13 plan prior to completion of the plan for three purposes:

(1) [to] increase or reduce the amount of payments on claims of a particular class provided by the plan;

(2) [to] extend or reduce the time for such payments; or

(3) [to] alter the amount of the distribution to a creditor whose claim is provided by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a).

Subsection (b)(1) further provides:

Section 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329(b)(1).

Accordingly, one of the requirements that must be met in order for the court to approve the Debtor's requested modification of the Plan is that set forth in Section 1325(a)(4) which is often referred to as the

---

**5.** Section 1329(a)(2) specifically identifies alteration of distribution to a creditor whose claim is paid outside the plan as a permitted modification.

"best interest test." This subsection provides as follows:

> (4) the value as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date.

11 U.S.C. 1325(a)(4). Trustee asserts that the words "as of the effective date of the plan," refer to the effective date of the modification and consequently require that this test be applied as of the date of the modification.

If Trustee is correct, the value of the real property which constitutes part of the estate must be ascertained as of the date of the modification and included in the calculation called for by the best interest test. A Chapter 7 liquidation hypothetically occurring on that date would yield to unsecured claim holders a pro-rata distribution of the proceeds of the liquidation of such property after payment of encumbrances thereupon. If this is the correct reading of the statutory provision, the court was in error in ordering a refund from Trustee to Debtor, as unsecured creditors would receive more under the hypothetical liquidation then the amount remaining in Trustee's hands after the refund.

Debtor argues to the contrary. Debtor asserts that the words "as of the effective date of the plan," refer to the effective date of the original Plan confirmed in this case. Thus Debtor states that the values found by the court at the original hearing where confirmation was approved, remain the values to be included in the application of Section 1325(a)(4) at the time that a modification is considered by the court.[6]

The significant difference between the value accepted by Trustee for purposes of the initial plan confirmation analysis and the market price received by Debtor under the approved sale is either attributable to an under-evaluation at the time of the original confirmation, or appreciation of the value during the pendency of this case. Nonetheless, if Debtor is correct that the date of the evaluation for purposes of consideration of the modification continues to be the effective date of the original confirmed Plan, the court's holding as to value (implicitly made) at the original confirmation should not be revisited at this time. *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."). *Cf. Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir.1993) (court's confirmation order is res judicata where it does not violate due process); *In re Pearson*, 96 B.R. 990 (Bankr. D.S.D.1989) (non-fraudulent undervaluation at confirmation of chapter 12 plan was res judicata and did not warrant post-confirmation modification).

There appears to be a split among courts that have considered this question and the court has located no precedent in

---

**6.** At the time that this case was considered for confirmation of the original plan, the Trustees in this district often relied upon tax assessment appraisals as the basis for establishing the value of real estate property of the estate. Where no creditor objected to confirmation of the plan and the Trustee recommended to the court that the plan be confirmed, that recommendation included the Trustee's conclusion that the plan before the court contained a funding level sufficient to pay to the unsecured claimants at least the amount that they would receive from all property, including such real estate, in a hypothetical Chapter 7 liquidation.

the opinions of the United States Court of Appeals for the Fourth Circuit. Trustee primarily relies on the decision of the United States Bankruptcy Court for the District of Massachusetts set forth in *In re Barbosa*, 236 B.R. 540 (1999), *aff'd* 243 B.R. 562 (D.Mass.2000); *aff'd* 235 F.3d 31 (1st Cir.2000). In *Barbosa*, the court had confirmed a chapter 13 plan that provided for an agreed-upon payment to a creditor secured by a lien upon debtors' investment property and a payment to unsecured creditors of "not less than 10%." *Id.* at 542. The agreement between debtors and the secured creditor stipulated to a valuation of $64,000 for the investment property. *Id.* Post-confirmation, debtors, with court approval, sold the investment property for $137,500. *Id.* at 543. The chapter 13 trustee then filed a motion to modify plan after confirmation to increase the plan payments to provide for 100% payment to unsecured creditors (an amount less than the net proceeds of the sale of the investment property). *Id.* The court was then faced with the issue of whether the court can compel debtors to modify their chapter 13 plan to use proceeds of a post-confirmation sale of property to satisfy unsecured creditors beyond what had been proposed in the originally confirmed plan.

The *Barbosa* court first addressed the issue of whether the chapter 13 trustee must show a substantial change in circumstance to warrant modification of the debtors' plan. Relying on the decision of *In re Witkowski*, 16 F.3d 739 (7th Cir.1994), the court rejected the debtors' assertion that a substantial change in circumstance was required for modification. *Id.* at 547–48. In so ruling, the court emphasized that the circumstances under which a plan may be modified were clearly limited to those set forth in Section 1329 and that modification

was not an acceptable alternative to the appeals process for confirmation. *Id.*

After discussing the vesting language and the effects of Section 1327, something that clearly distinguishes the previously reported cases from the instant case before this court,[7] the *Barbosa* court confronted the question of whether the best interest test requires that valuations be updated at the time of modification or whether the valuations from the time of original confirmation should be used. In finding that the good faith requirements of the Bankruptcy Code mandated that the debtors' plan be modified to provide full payment to unsecured creditors from the proceeds of the sale of their rental property, the court reflected:

> The Court concludes that resolution of these multifaceted issues cannot readily be resolved by attempting to harmonize the various provisions of Chapter 13 of the Bankruptcy Code. The binding effects of confirmed plans, the purposes of the proposed modifications and the unique circumstances of each case must be weighed to reach an equitable result in each case. The backdrop for the Court's decision is the recognition that a confirmed plan is a contract binding on creditors and that the discharge of debts is a privilege, not a right. Overriding all other concerns is the issue of good faith. In view of congress's intent in enacting chapter 13 to encourage debtors to repay their debts to the best of their ability, it would be anomalous for this Court to determine that the Debtors can retain the excess proceeds from the sale of the Property without satisfying their unsecured claims.

*Id.* at 555–56.[8]

Prior to *Barbosa*, the United States Bankruptcy Court for the District of Ore-

---

7. In *Barbosa,* the property had vested to the debtors before the sale.

8. A year later, the same court found that where a debtor did not seek to sell or refi-

gon decided the case of *In re Walker,* 153 B.R. 565, 568 (Bankr.D.Or.1993). In *Walker,* the court relied on legislative history of Section 1329(b) in deciding that the best interest test must be applied and met as of the effective date of the modified plan. However, the debtor's allowable exemptions exceeded the difference between the scheduled value and the value at modification and the court therefore held that in a chapter 7 case the moving creditor and unsecured creditors would receive nothing from the asset. *Id.* at 570.

Although recognizing the difficulty in reconciling certain potential inconsistencies, in his treatise, Judge Keith Lundin, appears to agree with the *Barbosa* and *Walker* courts. He writes:

> For purposes of measuring whether a proposed modification satisfies the test in § 1325(a)(4), it might be reasonable to liquidate the estate on the effective date of the plan as modified. The effective date of the modified plan will probably be either the date of entry of the order approving the modified plan or some later date defined by the modified plan.

Keith M. Lundin, *Chapter 13 Bankruptcy,* 3d Ed. § 254.1, 254–2 (2000 & Supp.2002). *See also In re Nott,* 269 B.R. 250 (Bankr. M.D.Fla.2000) (when considering modified plan, best interest test is applied as of effective date of plan as modified).

Perhaps the leading case for those courts in dissent of the *Barbosa* and *Walker* rationale is that of *In re Forbes,* 215 B.R. 183 (8th Cir. BAP 1997). In *Forbes,* the Bankruptcy Appellate Panel ruled that post-petition, post-confirmation proceeds of a cause of action should not be included in consideration of modification. *Id.* at 191. In so ruling, the Panel did not mere-

ly hold that the best interest test must be performed with valuations taken from the original confirmation. Relying on past case decisions and the omission of the test from Section 1329(b)(1), it held that the best interest test should not be a factor in the post-confirmation modification at all. *Id.* at 191–92. Notably, in *Forbes,* the property at issue, in the form of litigation proceeds, was not estate property. Other courts have reached similar outcomes by finding either that the best interest test would not apply in modification proceedings, or that the original confirmation date is the correct date for valuing property when applying the best interest test. *Hollytex Carpet Mills v. Tedford,* 691 F.2d 392 (8th Cir.1982); *In re Green,* 169 B.R. 480 (Bankr.S.D.Ga.1994); *In re Statmore,* 22 B.R. 37 (Bankr.D.Neb.1982).

This court finds most persuasive the opinion of the United States Bankruptcy Court for the District of Massachusetts set forth in *Barbosa,* at least where (as in the instant case) the assets have not revested and thus are estate assets at the time of sale. *Barbosa* opinion appears to interpret the Section 1325(a)(4) as the legislative history indicates the section was intended. In fact, the legislative history to Section 1329(b) states, in part:

> In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, "the plan" as used in the section will be the plan as modified under this section, by virtue of the incorporation by reference into this section of proposed 11 U.S.C. 1323(b). Thus, the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan.

---

nance the property, an unsecured creditor could not compel such a modification simply because the debtor's property had appreciated substantially during four years between

confirmation and the proposed modification. *In re Trumbas,* 245 B.R. 764 (Bankr.D.Mass. 2000).

H.R.Rep. No. 595, 95th Cong., 1st Sess. 431 (1977), U.S.Code Cong. & Admin.News pp. 5787, 6386, 6387.

The Debtor's assertion that to apply the best interest test as of the date of the modification yields an inequitable result is not borne out in this case. What Debtor argues would be equitable is that unsecured claimants would receive a small percentage of their claims while Debtor receives a significant sum of money from the liquidation of *estate assets*.

However, if the court vacates its order approving Debtor's plan modification thus allowing Trustee to distribute the net proceeds of sale to the claimants, Debtor continues to receive significant relief and an opportunity for fresh start. Pursuant to the Sale Order, the remaining amount to be paid into the Plan from Debtor's wages is reduced by the sale proceeds that were paid to Trustee.[9] Upon plan completion, Debtor receives a discharge of all dischargeable debts including the unpaid portion of allowed claims. As this appears to have been the congressional intent in requiring that Section 1325(a) apply to any modification after confirmation, Debtor's assertion of inequity appears misplaced.

Although this court now finds that Debtor's requested modification reducing the required plan funding and thus generating a refund from Trustee should not have been approved, Debtor does appear entitled to request a modest amount be turned over to the Debtor by Trustee. Neither party has addressed the application of the Debtor's allowed exemption in the Property. Because Debtor asserted an exemption of $853.95 in the Property, to which exemption no objection has been filed, the Debtor's exemption is allowed in that amount. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *In re Forti*, 224 B.R. 323 (Bankr.D.Md.1998).

The Debtor's exempt interest allows Debtor to claim the sum of $853.95 from proceeds of sale, after the liens are satisfied, because the entire Property was sold and the proceeds are insufficient to satisfy liens, turnover the exempt amount to Debtor, and fully fund the Plan. This is the same result that would apply if a Chapter 7 liquidation of the Property occurred. However, if Debtor requests and receives that turnover of exempt proceeds from Trustee, the remaining unpaid balance of the Plan to be paid by Debtor through continuing wage attachments will not be reduced by the amount turned over to the Debtor by Trustee.

Accordingly, for these reasons, the court grants the Trustee's Motion for Reconsideration and will enter an order vacating its Order entered March 3, 2003 that granted Debtor's Motion to Modify the Order Approving Sale.

---

9. If the sale proceeds exceeded the remaining unpaid balance of a confirmed plan, it appears likely that approval of modification (including a modification to allow sale or refinancing of estate assets) would require that the plan modification also increase the total plan funding up to the amount of proceeds, but not to exceed an amount necessary to provide value equal to the amount of allowed claims. Such a modification would appear necessary to comply with the best interest test under such circumstances. Under such circumstance, no further payment of wages to the plan would be required because Section 1325(b)(1)(A) would have been satisfied.