**In re David O. STINSON, Sr., Dianne L. Stinson, Debtors.**

**No. 01–5–0729–SD.**

United States Bankruptcy Court,
D. Maryland,
at Baltimore.

Dec. 9, 2003.

Christopher M. Fascetta, Christman & Fascetta LLC, John J. Dickerson, Rodgers and Dickerson, Towson, MD, for Debtors.

*MEMORANDUM AND ORDER GRANTING TRUSTEE'S MOTION TO MODIFY DEBTORS' CHAPTER 13 PLAN*

E. STEPHEN DERBY, Bankruptcy Judge.

Before the court is the Motion to Modify Plan After Confirmation filed by the Chapter 13 Trustee (the "Trustee"), seeking to increase the original plan base from $23,400 to $45,000.

On January 16, 2001, Debtors filed their bankruptcy case, Schedules and Chapter 13 Plan. On Schedule A, Debtors listed the value of their residence at 310 Greengate Court, Westminster, Maryland (the "Property") as $87,000. On Schedule D, Debtors listed First Horizon Home Loan Corporation ("First Horizon") as a secured creditor holding a $81,345 lien on the

Property. The lien included an arrearage of $6,000. First Horizon filed a secured claim of $88,151.17, including $7,036.71 in arrearages. On Schedule C, Debtors exempted equity in the Property of $1.00.

Debtors' Chapter 13 plan (the "Plan") was amended and then confirmed on June 29, 2001. At confirmation, Debtors provided the Trustee with a market analysis that valued the Property at $110,000. The Plan provided for 60 monthly payments of $390 for a total funding of $23,400. It contemplated that Debtors would retain the Property, and it proposed to pay the pre-petition arrears in full through the Plan and post-petition payments outside the Plan. The Plan also provided that First Horizon would retain its lien on the Property. Pursuant to the Order Confirming Plan, property of the estate would not vest in Debtors until discharge or dismissal.

On April 9, 2003, Debtors filed a motion to sell the Property free and clear of liens for $133,900. In the motion to sell, Debtors stated that First Horizon was owed $80,549.32, per its lien on the Property, as of June 1, 2003. The motion proposed that the net proceeds of the sale would be forwarded to the Trustee to prepay the balance of the Plan.

On May 5, 2003, the court entered an order authorizing the sale of the Property. The order provided that the sale would be free and clear of liens "with all such liens to attach to the proceeds of sale in order of priority, and the proceeds of sale to be forwarded directly to the ... Trustee...." The Property was then sold.

The Trustee filed the instant motion on May 14, 2003, requesting the court to enter an order modifying the Plan. The Trustee points out that the contract sale price for the Property is $23,900 more than the market analysis of $110,000 that was provided to the Trustee at the time of confirmation of Debtors. Accordingly, the Trustee proposes that the Plan base be increased from $23,400 to $45,000 (a $21,600 increase) in order to recover "the value of the newly liquidated asset ... for the benefit of [the] unsecured creditors." In support of her position, the Trustee contends that the Chapter 7 liquidation test of 11 U.S.C. § 1325 is here applicable.[1]

Debtors have filed an opposition to the Trustee's proposed modification. Debtors argue that the Motion should be denied because modification is barred by the doctrine of *res judicata*. In support of their argument, Debtors contend that the Trustee has failed to meet the two prong test used to determine whether plan modification is warranted, namely, whether there is a change in a debtor's financial condition that is both (1) substantial and (2) unanticipated. *See In re Arnold,* 869 F.2d 240 (4th Cir.1989).

In *Arnold,* the United States Court of Appeals for the Fourth Circuit held that *res judicata* bars modification of plans "only where there have been no unanticipated, substantial changes" in the debtor's financial condition. *Id.* at 243 (citing *In re Fitak,* 92 B.R. 243, 249–50 (Bankr. S.D.Ohio 1988)). The debtor's reported yearly income in *Arnold* was $80,000. 869 F.2d at 241. Two years after the Chapter 13 payment plan was confirmed, the debtor's income had grown to $200,000. *Id.* An unsecured creditor then moved for a modification to increase the plan base. *Id.* The bankruptcy court granted the motion. *Id.*

---

**1.** Section 1325(a)(4), which is referred to as the "best interest test," provides that the court shall confirm a plan if:

    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under Chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4).

On appeal, the court noted that a plan could be modified any time after its confirmation, but before the completion of payments. *Id.* (citing 11 U.S.C. § 1329(a)).[2] The debtor argued that modification of his payments was barred by *res judicata. Id.* at 243. The court held that modification was warranted because there was a substantial change in the debtor's income (from $80,000 to $200,000), which could not have been reasonably anticipated by the Trustee at the time of confirmation because the $120,000 increase had occurred in only two years. *Id.* In so holding, the court adopted the "objective test" as applied in *In re Fitak,* 92 B.R. at 249–50, to determine whether the change in the debtor's income was unanticipated. *Id.* at 243.

In *Fitak* (which is also cited by the Debtors), the debtors sold their residence and the adjoining property for approximately $20,000 more than their appraised value at the time of confirmation. 92 B.R. at 250. The trustee then moved to modify the plan to recover the proceeds. *Id.* at 248. In determining whether modification was warranted, the court stated that "post-confirmation modification should be ordered pursuant to 1329(a) upon a showing of changed circumstances which affect a debtor's ability to pay." *Id.* at 250. According to the court, however, case law suggested that the scope of a post-confirmation modification was limited by *res judicata. Id.* The court concluded that modifications should be granted only in situations of unanticipated changed-circumstances. *Id.*

The *Fitak* court found that the trustee should have reasonably anticipated the appreciation in value because the sales of the properties were "explicitly provided for by the [p]lan," which contemplated the sales 57 months from the date of confirmation. *Id.* Noting that the trustee knew at confirmation that the plan provided "only for the payment of such portion of the proceeds from the sales as was necessary to 'liquidate ... [the][p]lan,'" the court the denied the trustee's motion for modification to recover the proceeds. *Id.* at 250–51.

■ The cases of *Arnold* and *Fitak* are factually distinguishable from the case *sub judice.* As mentioned *supra,* the *Arnold* decision involved a debtor whose yearly income increased by 150% two years after plan confirmation. The *Fitak* holding contemplated a situation in which the plan provided that the proceeds from the sale of the debtors' properties were to be applied to the plan. In the instant case, the confirmed plan includes terms by which (1) the Property would be retained by Debtors; (2) First Horizon would retain its lien on the Property; (3) Debtors would pay pre-petition arrears to First Horizon through the Plan; and (4) the Debtors would make post-petition payments to First Horizon outside the Plan. As the Trustee points out, the Debtors have initiated a *de facto* modification of the plan by voluntarily selling the Property and seeking to pay off their Plan obligation with the proceeds. In the process, the Debtors seek to bind the Trustee to the valuation of

---

**2.** Section 1329(a) provides that the Chapter 13 trustee, unsecured creditors or debtor may request modification of a confirmed Chapter 13 plan prior to completion of the plan for three purposes:

(1) [to] increase or deduce the amount of payments on claims of a particular class provided by the plan;
(2) [to] extend or reduce the time for such payments; or

(3) [to] alter the amount of the distribution to a creditor whose claim is provided by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

11 U.S.C. § 1329(a). Significantly, subsection (b)(1) provides that the requirements of Section 1325(a) apply to any modification under Section 1329(a).

the Property at the time of confirmation, and thus obtain the benefit of the Property's appreciation.

Recently, this court was faced with a similar situation in *In re Morgan* 299 B.R. 118 (Bankr.D.Md.2003). There, the debtor's confirmed Chapter 13 plan provided that the debtor's residence (which was valued at $135,990 on Schedule A) would be retained in the estate and that the debtor would pay the lien holders pre-petition arrears through the plan and post-petition payments outside the plan. *Id.* at 119. Shortly thereafter, the debtor filed a motion to sell the property for $193,000 and requested to pay the mortgagee $154,860.17. *Id.* The court entered an order approving the sale, which provided that the liens on the property were to be satisfied and that the closing agent would remit to the trustee "the lesser of: the remaining balance due upon the confirmed Chapter 13 plan, or the total remaining net proceeds...." *Id.* at 119–20. The order also provided that the plan would be modified "so that the debt to the [m]ortgagee would be paid outside of the ... [p]lan from proceeds of the [p]roperty." *Id.* at 120.

After the property was sold and the net proceeds ($22,373.22) were remitted to the trustee, the debtor filed a motion to modify the plan. *Id.* The debtor asked the court to enter an order "crediting the pre-petition arrearage paid to [the][m]ortgagee at settlement against the funding of the plan and ordering that [the] [t]rustee refund to debtor ... an amount that ... exceeded the remaining [p]lan balance," which the debtor calculated as $11,557.92. *Id.* The court granted the debtor's motion and ordered the trustee to refund $11,557.92 to the debtor. *Id.* The trustee moved for reconsideration, arguing that the court's approval of the modified plan violated the liquidation analysis required under the

"best interest" test in 11 U.S.C. § 1325(a)(4). *Id.*

The court granted the trustee's motion for reconsideration, holding that, when considering a modification, the court is required to perform a liquidation analysis under § 1325(a)(4) as of the time of the requested modification. *Id.* at 124–25 (adopting the holding of *In re Barbosa,* 236 B.R. 540, (Bankr.D.Mass.1999)). In so holding, the *Morgan* court noted that the debtor's motion to approve the sale required a modification of the plan. *Id.* at 120. The court reasoned that modification was warranted because

> [t]he [p]roperty to be sold was property of the estate, having not revested under the [o]rder of [c]onfirmation because the requested sale was to take place before [d]ebtor received a discharge in the Chapter 13 case. The remaining unpaid balance of the pre-petition mortgage arrearage was to be paid at the time of the consummation of the sale, rather than by periodic distribution from the [t]rustee and the source of the payments was to be from proceeds of the [p]roperty, rather than from periodic deduction from wages.

*Id.* at 120–21. The court concluded that those changes "altered the terms of the confirmed [p]lan." *Id.*

Here, modification of the plan is justified for the same reasons found in *Morgan, i.e.* because the Debtors have substantially changed the Plan by selling the Property. Under the Plan, the Property was an asset of the estate, which was not to re-vest in the Debtors until they received a discharge or the case was dismissed. See Order Confirming Plan, Dkt. No. 19. In addition, the Plan provided that First Horizon would retain its lien on the Property, with Debtors paying pre-petition arrears through the Plan and post-petition payments outside the Plan.

The source of payments under the Plan was periodic deductions from the Debtors' wages. As a result of the sale, however, all liens on the Property will attach to the proceeds. The remaining pre-petition arrears owed to First Horizon will be paid outside the Plan, rather than through the Plan. Finally, the plan is to be funded with the proceeds of the sale, rather than from periodic deductions from wages. All of these changes alter the terms of the Plan, and therefore, the Plan warrants modification.

The changes were unanticipated because the Plan expressly contemplated the Property would be retained by the Debtors. The changes were substantial because that sale value of the property was more than 21% higher than the value at confirmation. Further, the amount of excess proceeds after satisfaction of all liens was more than double the original Plan base. The *Arnold* test was thus satisfied.

■ When considering a plan modification where assets have not re-vested and thus are estate assets at the time of sale, the court is required to perform a liquidation analysis under Section 1325(a)(4) as of the time of the requested modification, not as of the date of confirmation of the original plan. *See Morgan* 299 B.R. at 124. Section 1329(b)(1), which addresses modification of a plan after confirmation, expressly provides that Section 1325(a) applies "to any modification under subsection (a) of this section." 11 U.S.C. § 1329(b)(1). Section 1325(a) provides that the court shall confirm a plan if, *inter alia*, the value "as of the effective date of the plan" meets the best interests of creditors test, namely, not less than creditors would receive in Chapter 7. *Id.* at § 1325(a)(4). By virtue of Section 1325(b)(1), plan is the modified plan, and it must meet the test of Section 1325(a)(4) at the time of its effective date. In *Morgan,* the court explained,

[the] *Barbosa* opinion appears to interpret the Section 1325(a)(4) as the legislative history indicates the section was intended. In fact, the legislative history to Section 1329(b) states, in part:

> In applying the standards of proposed 11 U.S.C. 1325(a)(4) to the confirmation of a modified plan, "the plan" as used in the section will be the plan as modified under this section, by virtue of the incorporation by reference into this section of proposed 11 U.S.C. 1323(b). Thus, the application of the liquidation value test must be redetermined at the time of the confirmation of the modified plan. H.R.Rep. No. 595, 95th Cong., 1st Sess. 431 (1977), U.S.Code Cong. & Admin. News pp. 5787, 6386, 6387.

The [d]ebtor's assertion that to apply the best interest test as of the date of the modification yields an inequitable result is not borne out in this case. What [d]ebtor argues would be equitable is that unsecured claimants would receive a small percentage of their claims while [d]ebtor receives a significant sum of money from the liquidation of *estate assets.*

However, if the court vacates its order approving [d]ebtor's plan modification thus allowing [t]rustee to distribute the net proceeds of sale to the claimants, [d]ebtor continues to receive significant relief and an opportunity for fresh start. *Id.* at 124–25 (emphasis in original).

Here, the liquidated value of the Property at modification equals its sale price, $133,900. That price is $23,900 greater than the value of the Property accepted at confirmation. The Plan currently provides for 60 monthly payments of $390 for a total funding of $23,400. Accordingly, the Plan's current funding fails the "best interests" test because the estate is worth more than the Debtors propose to pay through

the Plan. The plan base should be increased from $23,400 to $45,000 in order to provide the unsecured creditors with a fund that is equivalent to the amount that would be available if the estate were liquidated under Chapter 7.

Therefore, upon consideration of the Trustee's Motion to Modify Plan, the accompanying memoranda, the Trustee's proposed modified plan, and for the reasons stated above, it is by the United States Bankruptcy Court for the District of Maryland,

**ORDERED,** that the modified plan proposed by the Trustee is hereby approved.