Donald B. RITTS, II, et al., Appellants,

v.

Nancy GRIGSBY, Trustee, Appellee.

No. CIV. PJM 03–1241.

United States District Court,
D. Maryland.

March 18, 2004.

John Douglas Burns, The Burns Law Firm LLC, Greenbelt, MD, for Appellants.

Mary Park McLean, Staff Attorney, Bowie, MD, for Appellee.

## OPINION

MESSITTE, District Judge.

Appellants Donald B. Ritts, II and Mary M. Ritts, Debtors in a Chapter 13 bankruptcy proceeding, appeal from an Order of the Bankruptcy Court denying their Motion for Return of Surplus Funds dated March 20, 2003.[1] Having considered their brief and the brief in opposition filed by Appellee Nancy Spencer Grigsby, Chapter 13 Trustee, as well as oral argument by counsel, the Order of the Bankruptcy Court will be AFFIRMED.

### I.

Debtors filed a voluntary Chapter 13 case under the Bankruptcy Reform Act of 1978 on September 21, 1999, and a plan was duly confirmed. Subsequently, on or about August 19, 2002, Debtors filed a Motion to Modify Plan pursuant to 11 U.S.C. § 1329(a)(1) and by Order of the Bankruptcy Court dated October 16, 2002, a modified plan was approved.

The modified plan addressed the payment of Cenlar, holder of the first trust on Debtors' residence at 902 Colton Court, Prince Frederick, Maryland, as well as that of Beneficial Second Trust, holder of the second trust on the property. Under the modified plan, the Trustee was ordered to "cure arrears on [the] First Trust due and owing Cenlar [$18,517.80] and ... tender pro-rata monthly payments to general unsecured creditors holding allowed claims and timely filed claims from remaining disposable income over the term of the plan, including Trustee's fees." Beneficial

---

1. The Order was entered on March 21, 2003.

Second Trust was to be paid pro-rata with the general unsecured creditors. The modified plan recited that payments to the Trustee under the plan should be "out of future income," at a specified monthly rate [2] "or all of the debtor(s)' future disposable income pursuant to 11 U.S.C. § 1322(a)(1) and 1325(b)(2)."

On or about December 18, 2002, citing issues that they had with Cenlar pertaining to their alleged default, Debtors filed a Notice of Private Sale of the Colton Court property pursuant to 11 U.S.C. § 363(b) and Fed. R. Bank. P.2002(a)(2) and 6004(a). By pleading dated December 31, 2002, the Trustee consented to the Notice of Private Sale but, *inter alia*, on the following condition:

That the settlement agent undertakes to forward any and all proceeds from the transaction to pay in full the balance of the Chapter 13 plan to the Trustee.

To similar effect, by letter dated January 11, 2003, the Trustee advised Debtors and their counsel that the amount needed to pay the base balance on their account was $9,009.04. "This amount," wrote the Trustee, "will satisfy the case, and a letter indicating that the case is completely funded will be sent to you upon receipt of the final payment and a discharge will be requested from the court." The letter from the Trustee continued:

Regardless of whether you pay the mortgage lender off directly at settlement, the base balance remains at this amount, as you have not modified you (*sic*) plan to reduce the base balance. The funds that would have been paid on

the mortgage will go towards the balance of unsecured claims. All other proceeds from settlement may be paid directly to you at settlement.

On January 14, 2003,[3] the Bankruptcy Court signed an Order upon Debtor(s)' Motion to Sell Property Free and Clear of Liens, directing "(t)hat after the payment of all liens of record and the expenses of sale, the settlement agent shall forward to the ... Chapter 13 Trustee from the sale proceeds sufficient funds to complete the funding of Debtor's confirmed Chapter 13 Plan." The Court's Order went on to provide "that the Plan confirmed in this case is hereby modified to provide that any debt that is secured by a lien upon the property shall be paid from the proceeds of the sale of the property."

Debtors took no exception to the conditions stated by the Trustee in her formal consent of December 31, her letter of January 11, 2003, or by the Bankruptcy Court in its Order of January 14, 2003.

On January 16, 2003, the Colton Court property went to settlement. In accordance with the Court's Order of January 14, 2003, after deducting the costs of sale and the payment of debts secured by a lien on the property, the settlement agent forwarded $9,009.04 to the Trustee to be applied to Debtors' confirmed Chapter 13 Plan. The balance of the sale proceeds—$31,448.66—were forwarded to Debtors. Subsequently, after paying the base balance of Debtors' Chapter 13 Plan, the Trustee refunded to them the remaining proceeds of $605.00, and processed their early discharge, which occurred on or about March 3, 2003.[4]

**2.** The rate was originally $404.00 per month, but was reduced to $297.76 for months 1 to 34 and $404.00 per month for the remaining 26 months, gross funding being established at $20,628.14.

**3.** The Order was entered on January 16, 2003.

**4.** An additional refund of $444.62 was returned to Debtors by the Trustee on or about April 30, 2003.

On or about March 6, 2003, Debtors filed a Motion for Return of the Surplus Sale Proceeds from the Trustee. The Motion argued in essence that distribution of the $9,009.04 to the Trustee was inappropriate because it did not come from "disposable income," which Debtors argued meant "projected future earnings." Absent a modification of the plan to provide for disbursement of any monies to unsecured creditors beyond projected disposable income, Debtors urged, the Trustee lacked authority to apply proceeds from the sale of the real estate. Thus, said Debtors, "the Modified Plan would have to be amended in order to allow the Trustee to tender any distributions beyond the projected disposable income amount set forth in its text, . . . and particularly to satisfy any claims from sources other than disposable income." Accordingly Debtors sought a return of the $9,009.04 Trustee had remitted to the unsecured creditors. In opposition, the Trustee argued that she had proceeded consistently with the Bankruptcy Court's Order of January 14, 2003.

By Order dated March 20, 2003, without a hearing and without a written opinion, the Bankruptcy Court denied the Motion for Return of Surplus Sale Proceeds.

Debtors appeal from that Order of denial.

## II.

Debtors frame their challenge to the Bankruptcy Court's Order in the following terms:

1) Whether the funding terms of a modified confirmed plan are binding on all parties in interest;

2) Whether the bankruptcy court erred in ruling that funding outside of the scope of disposable income authorized under the modified plan should go to unsecured creditors.

Framed this way, of course, the rather obvious response to the first question is in the affirmative, while that to the second question is in the negative. The problem, however, is that, the issues as framed have little relation to either the facts of the case or the arguments Debtors actually make. The real issue appears to be this:

Where there is a confirmed Chapter 13 plan under which Debtors are to make monthly payments from "disposable income," and where Debtors file a motion seeking approval of a sale of real property that is part of the bankruptcy estate, may the Chapter 13 Trustee and the Bankruptcy Court condition the sale upon the settlement agent remitting to the Chapter 13 Trustee from the sale proceeds sufficient funds to complete the funding of Debtors' confirmed Chapter 13 plan?

Debtors in effect argue that, unless the Bankruptcy Court acts pursuant to an express Motion to Modify the plan, it may not impose such a condition, with the result that any funds paid over to the Trustee to complete funding of the plan should be refunded to them. The Chapter 13 Trustee argues that the Debtors' Motion to Sell Property Free and Clear of Liens necessarily required a modification of the Chapter 13 plan and that the Bankruptcy Court's Order of January 14, 2003 in fact accomplished that modification.

## III.

The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Deutchman*, 192 F.3d 457, 459 (4th Cir.1999) (internal citations omitted). Since this appeal involves a question of law, the Court considers the matter *de novo*.

## IV.

The Court agrees with the Trustee that this case is not about the meaning of "dis-

posable income" under the Debtors' Chapter 13 plan. It involves nothing more than deciding whether the Court's Order upon Debtor(s)' Motion to Sell Property Free and Clear of Liens in fact accomplished modification of the plan. If it did, there is nothing more to discuss. The Court holds that it did.

■ Although Chapter 13 plans are ordinarily fixed, the Bankruptcy Code provides for their modification under appropriate circumstances:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) Extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan, to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title may apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

11 U.S.C. § 1329(a) and (b).

■ Obviously the clearest and most direct manner for a debtor, trustee or holder of an unsecured claim to seek modification of a plan would be to file a motion styled "Motion for Modification of Plan." Nevertheless, nothing in the Bankruptcy Code suggests that the mere styling of the pleading determines its operative effect.

Cf. *People ex rel. Ryan v. West Chicago,* 216 Ill.App.3d 683, 688, 159 Ill.Dec. 261, 575 N.E.2d 1321, 1324 (1991) ("In determining the nature of a pleading or a motion, courts are not bound by the title given the document by a party; instead, the substance of the document will be examined."); *Hill v. Hill,* 118 Md.App. 36, 44, 701 A.2d 1170,1174 (Md.App.1997) ("[W]hen motions and other pleadings are considered by a trial judge, it is the substance of the pleading that governs its outcome, and not is form."); *Davis v. Mathis,* 846 S.W.2d 84, 89 (Tex.App.—Dallas 1992, no writ) ("The character of a motion is to be determined from its substance and not from its caption."); *Trembly v. Mrs. Fields Cookies,* 884 P.2d 1306, 1310, n. 2 (Utah App.1994) ("[T]he substance, not caption, of a motion is dispositive in determining the character of the motion."). In other words, to the extent that a request of the Court necessarily seeks modification of a plan and to the extent that the Bankruptcy Court eventually grants the requested relief, the plan is *de facto* modified.

Judge Keir made this point recently in *In re Morgan,* 299 B.R. 118 (Bankr.D.Md. 2003). There a Chapter 13 debtor had filed a notice of intention to sell real property. The trustee responded that he did not object to the sale on the condition that the proceeds of the sale, after payment to lienholders (not to include pre-petition arrears), be turned over to the trustee for funding the plan. The bankruptcy court entered an order approving the sale, provided that the liens on the property were satisfied and that the settlement officer would remit to the Chapter 13 trustee either the remaining balance due on the confirmed Chapter 13 plan or, if less than that amount were available, whatever total the remaining proceeds might be. The bankruptcy court's order also included a

specific reference to modifying the plan so that the debt to the mortgagee would be paid outside the modified plan.

In accordance with the order, the property was sold and, after payment of the liens and the costs, the settlement agent remitted the net proceeds to the trustee. The debtor then filed a motion seeking modification of the plan to credit the prepetition arrearage paid to the mortgagee at settlement against the funding of the plan, such that the trustee would have to refund to the debtor funds received by the trustee from the settlement agent, an amount the debtor argued was in excess of the remaining plan balance.

Although Judge Keir's opinion eventually focused on the issue of whether the liquidation analysis required by Section 1325(a)(4) of the Bankruptcy Code should be performed as of the time of the requested modification or whether the original analysis done as of the date of the confirmation of the original plan should remain applicable, he specifically addressed the effect of the debtors' initial motion to approve the sale of the property:

> Although not specifically requested in the form of motion, Debtor's initial motion to approve sale required a modification of the plan. The Property to be sold was property of the estate, having not revested under the Order of Confirmation because the requested sale was to take place before Debtor received a discharge in the Chapter 13 case. The remaining unpaid balance of the prepetition mortgage arrearage was to be paid at the time of the consummation of the sale, rather than by periodic distribution from Trustee and the source of the payments was to be from proceeds of the Property, rather than from periodic deductions from wages. All of these changes altered terms of the confirmed Plan. It was for this reason that

in the Sale Order, the court recognized the consequent plan modification and approved it. The payment to Trustee by the settlement officer of all net proceeds of the sale up to the remaining unpaid funding of the plan was in accordance with that Sale Order. [Footnote omitted]

299 B.R. at 121–22.

Those facts are essentially on all fours with the present case. Judge Keir recognized the substantive effect of the motion to approve sale; that it necessarily modified the confirmed plan. The same may be said of the present case; Debtors' Motion to Sell necessarily occasioned modification of their confirmed plan.

Nor are Debtors in any position to argue surprise or unfairness that their request to sell effected the modification. Their Notice of Intent to Sell was filed on December 18, 2002. On December 31, 2002, the Trustee issued her conditional approval of the sale to which Debtors not only did not object but in conjunction with which they apparently urged the Trustee to expedite the pay-off of the plan and their early discharge. Then, on January 11, 2003, the Trustee forwarded a letter to Debtors and their counsel, advising of the balance due to complete the gross funding of the confirmed plan and advising further that, absent a modification to reduce such gross funding, Debtors would remain obligated to complete the gross funding of the plan which Trustee proposed would be paid out of the excess proceeds of the sale of the property. Again, Debtors raised no objection.

Then came the Bankruptcy Court's Order of January 14, 2003, granting Debtors' Motion to Sell Property Free and Clear of Liens, again providing not only for the payment of any debt secured by a lien on the property to be paid at settlement, but also that, after payment of the liens of

record and expenses of sale, the settlement agent would forward to the Trustee funds sufficient to complete funding of the confirmed Chapter 13 plan. Again Debtors took no exception. Had they done so, either the sale might not have been approved or a more formal order of modification of the plan might have been entered.

Instead, on March 6, 2003, Debtors filed their Motion for Return of Surplus Sale Proceeds from Chapter 13 Trustee, raising for the first time their "disposable income" argument, suggesting that the modified plan "would have to be amended in order to allow the Trustee to tender any distributions beyond the rejected disposable income … and particularly to satisfy any claims from sources other than disposable income."

While the Court accepts that proposition, as indicated, it holds that in fact modification of the plan was necessarily sought by reason of Debtors' Motion to Sell. The Bankruptcy Court's Order approving the sale conditional upon applying sale proceeds sufficient to complete funding of the Debtors' confirmed plan, to that extent, simply accomplished the modification. There was, accordingly, no reason for the Bankruptcy Court to return surplus proceeds to the Debtors.

The Order of the Bankruptcy Court dated March 20, 2003, denying the Motion to Return Surplus Funds will be AFFIRMED.

A separate Order will be ENTERED.